UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CITATION CORPORATION, *et al.*,[1]  )  )   Debtors. ) ) ) ) | Case No. 04-8130-TOM-11  (Jointly Administered) |
| _____ | |
| AVCO CORPORATION,  )  )   Creditor, )  ) v.  )  ) CITATION CORPORATION, et al., )  )   Debtors. ) | Contested Matter |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Citation Corporation's, its holding company, and certain of its direct and indirect subsidiaries, as debtors and debtors-in-possession in the jointly administered bankruptcy case (collectively the "Debtors") *Motion for Ruling on Debtors' Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* ("Motion

---

[1] In addition to the Citation Corporation, the Debtors include the following entities: (i) Citation Holding Company, (ii) Berlin Foundry Corporation, (iii) Bohn Aluminum, Inc., (iv) Castwell Products, Inc., (v) Citation Precision, Inc., (vi) HI-TECH, Inc., (vii) Iroquois Foundry Corporation, (viii) ISW Texas Corporation, (ix) Mansfield Foundry Corporation, (x) OBI Liquidating Corp., (xi) Texas Steel Corporation, (xiii) TSC Texas Corporation, (xiii) Citation Aluminum, LLC, (xiv) Citation Casting, LLC, (xv) Citation Grand Rapids, LLC, (xvi) Citation Lake Zurich, LLC, (xvii) Citation Michigan, LLC, (xviii) Citation Wisconsin Forging, LLC, (xix) Citation Wisconsin, LLC, (xx) ITM Holding Co., LLC, (xxi) Interstate Southwest, Ltd., (xxii) Texas Foundries Ltd., (xxiii) MFC Liquidating Company, Ltd., and (xxiv) Citation Camden Casting Center, Inc.

for Ruling") filed on June 2, 2005. AVCO Corporation ("AVCO") filed an Objection to the Motion for Ruling on June 16, 2005. A hearing was held on June 20, 2005. Appearing at the hearing were Jesse Vogtle, Jr. and Christie Dowling, Attorneys for AVCO; and Michael Hall, Chris Carson, Gerald Gillespy, Marc Solomon and Glenn Glover, Attorneys for the Debtors.

The Court has jurisdiction pursuant to 28 U.S.C. §§151, 157(a) and 1334(b) and the United States District Court for the Northern District of Alabama's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[2] This is a core proceeding as defined in 28

---

[2] 28 U.S.C. § 151 provides:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as otherwise provided by law or by rule or order of the district court.

28 U.S.C. § 157(a) provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 1334(b) provides:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The General Order of Reference as amended provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

U.S.C. §157(b)(2)(B).[3]

The Motion for Ruling requests the Court lift the stay[4] on, and enter a ruling on, the Debtors' *Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation*. The Court has reviewed and considered the Motion for Ruling and the Objection thereto, arguments of counsel and the law and finds and concludes as follows.[5]

### I. Factual Background

This proceeding concerns the manufacture of rough crankshaft forgings by certain

---

[3] 28 U.S.C. § 157(b)(2)(B) provides:

> (b)(2)Core proceedings include, but are not limited to–
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

[4] This Court entered an Order on April 28, 2005 staying any ruling on the Debtor's *Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* and setting it for a status conference on June 20, 2005. (Proceeding No. 1605). The circumstances surrounding this Order are discussed more thoroughly in the "Factual Background" section herein.

[5] This Court may take judicial notice of the contents of its own file. See, e.g., In re Steeley, 243 B.R. 421, 427 (Bankr. N.D. Ala. 1999)(citations omitted). In addition to the Debtors' Motion for Ruling and AVCO's Objection the Court has also reviewed and considered the *Debtor's Third Amended Joint Plan of Reorganization*, all pleadings related to the Debtors' *Objection to Claims of AVCO Corporation*, the Debtors' *Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* and all related filings, AVCO's *Response to the Motion for Partial Summary Judgment* and all relating filings, the Debtors' *Reply to the Response to the Motion for Partial Summary Judgment,* AVCO's *Motion for Estimation of Claims Pursuant to §502(c)* and AVCO's *Motion for Temporary Allowance of Claims of AVCO Corporation Pursuant to Rule 3018(a) FRBP for Purposes of Rejecting or Accepting the Debtors' Joint Plan of Reorganization* and the Response thereto (collectively the "Pleadings").

-3-

Debtors under a Master Supply Agreement and addenda 1 and 2 thereto (collectively the "MSA") with AVCO. AVCO purchased rough crankshaft forgings from certain Debtors to make crankshafts for aircraft engines which AVCO manufactures and sells. A dispute arose between the parties to the MSA when crankshafts in certain AVCO aircraft engines failed.

The parties subsequently filed competing lawsuits concerning the cause of the crankshaft failures. Debtor Interstate Southwest, Ltd. ("ISW") filed a lawsuit in Grimes County, Texas ("Texas lawsuit"), the site where the rough crankshaft forgings were manufactured under the MSA.[6] AVCO then filed a lawsuit against certain Debtors, specifically IFI, Citation Wisconsin Forging, LLC and Citation Corporation ("Citation"), in Pennsylvania ("Pennsylvania lawsuit") where AVCO manufactures aircraft engines. AVCO was sued in Ohio following the crash of an airplane equipped with an AVCO manufactured engine. AVCO then filed a third party complaint against, *inter alia*, Citation, IFI and ISW in Ohio ("Ohio lawsuit") seeking indemnification and contribution. AVCO is also a named defendant in a pending Florida lawsuit which is very similar to the lawsuit currently pending against it in Ohio.[7] Unlike in Ohio, however, AVCO has not filed a third party complaint against any of the Debtors.

The Debtors filed for Chapter 11 bankruptcy protection on September 11, 2004. The Pennsylvania and Ohio lawsuits were immediately stayed. However, because a Debtor entity was the plaintiff in the Texas lawsuit, that litigation proceeded to trial. After a six week jury trial a

---

[6] ISW's First Amended Original Complaint averred that Interstate Forging Inc. ("IFI"), a party to the original MSA, had assigned all of its rights in and obligations under the MSA to ISW and ISW was attorney-in-fact for IFI.

[7] Although it is unclear when the Florida lawsuit was actually filed, it appears to have been filed in the late-spring of 2005.

-4-

judgment was entered by the Texas court in favor of ISW, on its own behalf and on behalf of IFI, and against AVCO awarding damages totaling approximately $96 million (the "Texas Judgment"). The Texas Judgment is currently on appeal.

### AVCO's Proofs of Claim and Subsequent Claims Litigation

AVCO, on behalf of its Textron Lycoming Reciprocating Engine Division, filed a total of three proofs of claim (Claims 30, 85 and 1957) against the Debtors' jointly administered bankruptcy estate. Claims 30 and 85 ("Original AVCO Claim") were filed on October 14, 2004 and are based on the MSA and addenda 1 and 2 thereto (collectively the "MSA") and seek, *inter alia*, damages related to allegedly defective crankshafts produced by ISW.[8] AVCO asserts the same claims in the Original AVCO Claim as it asserted in the Pennsylvania and Ohio lawsuits.

Claim 1957 ("Rejection Claim") was filed on January 7, 2005 and is based upon, *inter alia*, damages resulting from the Debtors' rejection of the MSA and a $306,000.00 contingent administrative claim relating to this Court's *Amended Consent Order Authorizing Lycoming to Take Possession of its Steel at the Navasota Facility* entered on November 18, 2004. (Proceeding No. 580).

The Debtors filed an *Objection to Proof of Claim of AVCO Corporation* ("Objection to Claim") on February 16, 2005 contending that AVCO's claims should be disallowed based on the Texas judgment. (Proceeding No. 1070) The Debtors subsequently filed a *Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* ("Summary

---

[8] Claims 30 and 85 are identical claims. Two different claim numbers were apparently assigned because AVCO filed the proof of claim with both the Bankruptcy Court and with the Claims Agent. The Court will therefore treat claims 30 and 85 as one claim.

-5-

Judgment Motion") on March 31, 2005 based on the same argument. (Proceeding No. 1367) AVCO filed a Response to the Summary Judgment Motion on April 14, 2005. (Proceeding Nos. 1491 & 1492)

Since an objection was pending to AVCO's claims and thus those claims were not deemed allowed claims under 11 U.S.C. § 502, AVCO was not entitled to accept or reject the Debtors' proposed plan of reorganization under 11 U.S.C. § 1126(a). Therefore, AVCO filed a *Motion for Temporary Allowance of Claims of AVCO Corporation Pursuant to Rule 3018(a) FRBP for Purposes of Rejecting or Accepting the Debtors' Joint Plan of Reorganization* (the "3018 Motion") on April 7, 2005. (Proceeding No. 1444) AVCO also filed a *Motion for Estimation of its Claim for Purposes of Allowance Pursuant to 11 U.S.C. 502(c)* (the "502 Motion") on April 14, 2005. (Proceeding No. 1493)

The Summary Judgment Motion, the 3018 Motion and the 502 Motion were all heard by this Court on April 25, 2005. Each of the Motions, as well as responses and replies thereto, were extensively briefed to this Court prior to the hearing.

Following the April 25th hearing, the Court entered an Order and Notice of Hearing staying any ruling on the Summary Judgment Motion and the 502 Motion and setting a status conference for June 20, 2005. (Proceeding No. 1605) In a separate Order on the 3018 Motion the Court estimated AVCO's claims at $0.00 (with one minor exception) for voting purposes pursuant to Rule 3018(a). (Proceeding No. 1698) In that Order the Court also noted

> Although this Court believes that the Texas Judgment may be entitled to be used by the Debtors to disallow AVCO's claims, the Court voiced its concern at the hearing as to the duplicity of judicial resources. If this Court rules on the summary judgment in favor of the Debtors based upon the Texas Judgment, then that Order will likely be appealed and

two appeals may proceed simultaneously, both dependant upon the Texas Judgment which may or may not be affirmed.

In re Citation Corp., et al., No. 04-8130, Proc. No. 1698 n.8 (Bankr. N.D. Ala. May 5, 2005)(Order on AVCO's 3018 Motion).

Shortly after the April 25, 2005 hearing the Debtors sought to transfer the Pennsylvania lawsuit to this Court. Specifically, on May 2, 2005, certain Debtors removed the Pennsylvania action to the United States Bankruptcy Court for the Middle District of Pennsylvania ("Pennsylvania Bankruptcy Court") and sought to have it transferred to this Court.[9] AVCO opposed the removal and transfer.[10] These matters were set for hearing in the Pennsylvania Bankruptcy Court on June 21, 2005. The hearing was held but this Court is not aware of a ruling by the Pennsylvania Bankruptcy Court.

In the meantime, the Debtors' Third Amended Joint Plan of Reorganization under Chapter 11 (the "Plan") was confirmed by Order of this Court on May 18, 2005. (Proceeding No. 1843) Pursuant to the Plan, AVCO is Class 5 creditor holding two general, unsecured claims. Class 5 creditors holding "allowed claims" (as defined by the Plan) will receive a pro rata share of a $10 million "pot" created by the Reorganized Debtors for the purpose of paying such claims. As previously noted, AVCO's claims are not currently "allowed claims" under 11 U.S.C. § 502 since

---

[9] Debtors filed a *Notice of Removal* and a *Motion to Transfer Venue to the United States Bankruptcy Court for the Northern District of Alabama, Southern Division* in the Pennsylvania Bankruptcy Court.

[10] On May 18, 2005, AVCO filed a *Motion ... to Remand or Abstain* (and a brief in support thereof) and an *Objection to Debtor/Defendants' Motion to Transfer Venue to the United States Bankruptcy Court for the Northern District of Alabama, Southern Division* in the Pennsylvania Bankruptcy Court.

-7-

an objection is pending.

Pursuant to section 7.6 of the Plan, the $10 million "pot" is to be disbursed in two distributions: an initial distribution to holders of "allowed claims" less the amount of the Disputed Claims Reserve and a final distribution after all disputed claims are resolved. Section 8.3 of the Plan provides, *inter alia*, that "the Class 5 Trustee will not reserve for any Claims that have been disallowed or expunged by an order of the Bankruptcy Court prior to the Initial Distribution Date." Under that section, claims that are deemed disallowed prior to the initial disbursement date but are subsequently deemed allowed will get no distribution under the Plan.

Apparently unsatisfied with the Court's decision to stay the Summary Judgment Motion (at least until after the June 20, 2005 status conference as provided in the April 28, 2005 Order), the Debtors filed the Motion for Ruling on June 2, 2005. (Proceeding No. 1938) AVCO filed an Objection to the Motion for Ruling on June 16, 2005. (Proceeding No. 1985)

As with all pleadings filed by the Debtors and AVCO in this case, both the Motion for Ruling and the Objection thereto were thoroughly briefed to this Court.[11] Oral arguments were heard by the Court on June 20, 2005 and the matter was taken under advisement.

## II. Conclusions of Law

### A. Claim and issue preclusion create unique problems when judgment is on appeal

Problems may arise when a judgment which is final for purposes of res judicata is used to render a judgment in a second action. Reversal of the first judgment on appeal creates a

---

[11] Nearly all of the papers filed in the Pennsylvania removal and transfer litigation were submitted to this Court as exhibits to either the Motion for Ruling and AVCO's Objection.

-8-

problem with the second, dependant judgment. The potential for such a problem is present in this case.

To avoid this problem a leading treatise advises that "ordinarily it is better to avoid the res judicata question by dismissing the second action or staying trial and perhaps pretrial proceedings pending resolution of the appeal in the first action." See CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4433 (2005). It further notes that despite the general rule of preclusion while a judgment is on appeal, "strong reasons must be found to justify proceeding with the second action pending appeal from the first judgment." Id. Similarly, Restatement (Second) of Judgments § 16 provides

> it may ... be advisable for the court that is being asked to apply the judgment as res judicata to stay its own proceedings to await the ultimate disposition of the judgment in the trial court or on appeal. This course commends itself if the disposition will not be long delayed and especially if there is substantial doubt whether the judgment will be upheld.

Restatement (Second) of Judgments § 16 cmt. b. By staying litigation to which res judicata or collateral estoppel may technically be applicable courts have attempted to avoid potential problems which may arise by basing a judgment upon an earlier judgment which is subsequently set aside, reversed on appeal or otherwise nullified. See Superior Oil Co. v. City of Port Arthur, 535 F. Supp. 916 (E.D. Tex. 1982). Such a stay should be imposed, however, only after a careful and reasoned analysis by the court and after weighing competing interests of the parties. See, generally, Landis, 299 U.S. at 255.

The seminal Fifth Circuit case on this issue is Ray v. Halsey, 214 F.2d 366 (5th Cir.

-9-

Case 04-08130-TOM11    Doc 2071    Filed 07/05/05    Entered 07/05/05 11:28:07    Desc
Main Document    Page 9 of 19

1954).[12] In Ray, a state court judgment was entered for defendants in a car wreck case. The plaintiffs appealed. There was a parallel case filed in federal court (for statute of limitations purposes if the state court judgment was reversed) the day after entry of judgment in state court. The defendants moved to dismiss the federal case based on the state court judgment. The District Court granted the motion and dismissed the case. The Fifth Circuit reversed, holding

> [i]t may be that irrespective of whether the judgment in the state court operated as res judicata pending appeal, the federal court should take into consideration the possibility of a reversal of that judgment ... and should mould its orders and judgment so as to avoid any conflict of jurisdiction and to accomplish substantial justice. The federal court may properly stay proceedings before it until a final termination of the proceedings in the state court

Id. at 368. The case was remanded with instructions to stay the litigation pending the outcome of the state court appeal.

The Fifth Circuit reaffirmed its holding in Ray later that year in Occidental Life Ins. Co. v. Nichols, 216 F.2d 839 (5th Cir. 1954), a case from the United States District Court for the Northern District of Alabama. Occidental involved a state lawsuit by Nichols against Occidental claiming disability benefits and a federal lawsuit by Occidental against Nichols for declaratory judgment and rescission of the insurance contract upon which the state court lawsuit was based. The District Court granted Nichols' motion to dismiss the declaratory judgment and rescission action. Occidental appealed the dismissal of its federal lawsuit. In the meantime, a state court judgment was entered for Nichols against Occidental. Occidental appealed the state court judgment. Thereafter, Nichols filed a motion to dismiss Occidental's federal appeal or, in the

---

[12] All Fifth Circuit decisions released prior to September 30, 1981 were adopted as binding precedent in the Eleventh Circuit by Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

-10-

alternative, that Occidental's appeal was moot and barred by res judicata based on the state court judgment.

The Fifth Circuit reversed the dismissal of Occidental's declaratory judgment and rescission action and remanded the cause with directions to stay further proceedings until a final disposition of the state court proceedings was reached, at which time the District Court could "consider what effect that case will have as res adjucata on the issues." Id. at 842. Nichols' motion to dismiss was also denied.

The Fifth Circuit again addressed this issue in PPG Industries, Inc. v. Continental Oil Co., 478 F.2d 674 (5th Cir. 1973). PPG involved dueling declaratory judgment actions, one filed by PPG in a Louisiana federal district court and the other filed by Continental Oil ("Conoco") in a Texas state court. The Louisiana district court stayed the action pending the outcome of the Texas litigation. PPG appealed. The Fifth Circuit affirmed the District Court's decision to stay the litigation and, citing Ray and Occidental, held that "a federal district court has the discretionary power to stay its hand pending the outcome of a parallel state action." PPG, 478 at 681.

Even where all conditions for the application of res judicata are met, some courts have deferred ruling where the parallel state case is pending on appeal. The court in Superior Oil Co. v. City of Port Arthur, 535 F. Supp. 916, 921 (E.D. Tex. 1982) acknowledged that "[u]nder federal doctrine [of res judicata], the Superior Oil state suit judgment is res judicata for this suit." Id. at 921. However, the court refused to dismiss the suit; rather, it ordered the suit be "stayed as currently barred under the federal doctrine of res judicata until the termination of the parallel

-11-

proceedings." Id. In reaching its decision, the court reasoned

> Ordinarily, the determination that a suit is barred by res judicata requires a dismissal. Since, however, the Superior Oil state suit is pending on appeal and the possibility of reversal exists, the appropriate action of this Court is to stay this proceeding until final resolution of the state suit is achieved. Glen Oaks Utilities, Inc. v. City of Houston, 280 F.2d 330, 334 (5th Cir. 1960)("[s]ince appeal was pending from the state court judgment it would have been improper to dismiss the federal action on the ground of res judicata, but it was proper that the proceedings in the federal court be stayed until the final termination of the proceedings in the state court."); Occidental Life Ins. Co. v. Nichols, 216 F.2d 839 (5th Cir. 1954); Ray v. Hasley, 214 F.2d 366 (5th Cir. 1954). Therefore, other issues raised by the parties need not be examined by this Court at this time.
>
> Although res judicata is technically applicable, this doctrine is flexible. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 422-423, 84 S.Ct. 461, 468-469, 11 L.Ed. 2d 440 (1964). The Court does not decide today if this suit warrants a departure from the technical application of res judicata. The circumstances of this case may well require the doctrine of res judicata to yield in the interests of justice to the compelling need for remedy of this constitutional violation.

Superior Oil, 535 F. Supp at 921.

A number of other courts have followed the Fifth Circuit's Ray decision and its progeny. See, e.g., Cruz v. Melecio, 204 F.3d 14 (1st Cir. 2000); Ollie v. Riggin, 848 F.2d 1016 (9th Cir. 1988); Bailey v. Ness, 733 F.2d 279 (3d Cir. 1984); Ystueta v. Parris, 486 F.Supp. 127 (N.D. Ga 1980).

### B. The Debtors' Motion for Partial Summary Judgment and Objection to Claim are due to be stayed pending the outcome of the Texas appeal(s)

The Court's position on this matter is known to all parties involved. At the April 25, 2005 hearing the Court expressed its inclination to stay the claims litigation indefinitely while the Texas Judgment was on appeal. The Court's April 28, 2005 Order and Notice of Hearing did just that. In a separate Order on AVCO's 3018 Motion entered by this Court on May 5, 2005, the Court wrote

-12-

> This Court has in a separate Order continued the Debtors' *Motion for Partial Summary Judgment* and other related matters. Although this Court believes that the Texas Judgment may be entitled to be used by the Debtors to disallow AVCO's claims, the Court voiced its concern at the hearing as to the duplicity of judicial resources. If this Court rules on the summary judgment in favor of the Debtors based upon the Texas Judgment, then that Order will likely be appealed and two appeals may proceed simultaneously, both dependant upon the Texas Judgment which may or may not be affirmed.

In re Citation Corp., et al., No. 04-8130, Proc. No. 1698 (Bankr. N.D. Ala. May 5, 2005)(Order on AVCO's 3018(a) Motion). The concerns expressed by the Court during and after the April 25 hearing are still present. Although, in the Court's opinion nothing has changed to warrant a reconsideration of its previously issued stay of the claims litigation, the Court will more thoroughly explain the rationale behind its decision.

### 1. This Court has carefully considered the effects of staying the claims litigation.

This Court's decision to stay or rule on the pending claims litigation between the Debtors and AVCO will impact both this and other courts. In considering the Debtors' Motion to Rule, the Court considered the effect of staying the litigation, or conversely, of moving forward with the litigation. The Court discusses the effects of below.

#### i. Likelihood of numerous appeals

The likelihood of appeals exists regardless of the Court's decision on further staying the claims litigation. However, the number of likely appeals significantly increases if the Courts decides to proceed with the claims litigation. Any appeal from this Court's decision would first go to the United States District Court for the Northern District of Alabama and then possibly to

-13-

Case 04-08130-TOM11    Doc 2071    Filed 07/05/05    Entered 07/05/05 11:28:07    Desc
Main Document    Page 13 of 19

the United States Court of Appeals for the Eleventh Circuit.[13] This two-tiered appeals process is costly and time consuming both for the litigants and the courts.

If the Court denies the Debtor's *Motion for Ruling* and further stays the claims litigation the Debtors are likely to appeal the decision. Thus, a two-tiered appeal, both costly and timely, is likely. However, this appeal would, in this Court's view, be limited to the issue of whether the stay is appropriate and the resources required would be less than an appeal from an order granting summary judgment.

On the other hand, the Court's decision to proceed with the claims litigation, either by way of Summary Judgment or by a full trial on the merits of the Objection to Claim or the 502 Motion has the potential to result in various appeals: an appeal of the Court's decision to proceed with litigation, an appeal of the Court's Summary Judgment decision, an appeal of the Court's decision on the Objection to Claim and finally an appeal on the Court's estimation of claim on the 502 Motion. Each of these appeals could potentially involve the above described two-tiered appeal process and could ultimately land back in this Court only to start over from scratch.

Proceeding with the claims litigation at this point almost certainly ensures this litigation will be ensnared in federal appeals for many years, unnecessarily clogging the courts' calendars. Therefore, this factor weighs heavily in favor of staying the litigation.

### ii. Impact of the reversal of the Texas Judgment

The Texas Judgment is presently on appeal in Texas. Based on representations made by

---

[13] Appellants may also seek final review by the Supreme Court of the United States but the chances of certoria being granted are so slim the Court has not included that as a factor in its analysis.

-14-

Case 04-08130-TOM11   Doc 2071   Filed 07/05/05   Entered 07/05/05 11:28:07   Desc
Main Document   Page 14 of 19

counsel, the Texas appeals process may last anywhere from two to four years. That is, it may take less time to reach a final, non-appealable judgment in Texas than to resolve the multiple appeals described above.

The possibility that the Texas Judgment may be reversed on appeal is a major concern to this Court. The Debtors seek a final determination of their *Objection to Claim* (either by summary judgment or trial) based on the preclusive effect of the Texas Judgment. However, if the Texas Judgment is reversed and this Court has disallowed AVCO's claim based on that judgment it will be difficult, if not impossible, to undo the harm done to AVCO. Simply setting aside this Court's Order and allowing AVCO's claims will not right the wrong. If the initial distribution to Class 5 unsecured creditors is made after AVCO's claims are disallowed, AVCO will recover nothing under the Plan even if the Texas Judgment is subsequently reversed and AVCO's claims are allowed.[14]

This is precisely the type of situation in which "it is better to avoid the res judicata question by ... staying trial and perhaps pretrial proceedings pending resolution of the appeal in the first action." See CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4433 (2005). To do otherwise might result in an irreparable injustice to AVCO.[15]

If, on the other hand, the Texas Judgment is affirmed on appeal, the claims litigation will

---

[14] The Court acknowledges that AVCO's pro rata share of the $10 million Class 5 "pot" is minimal compared to its two other combined claims of $170 million.

[15] This reasoning is analogous to that used by other courts in staying (rather than dismissing) parallel federal litigation (or state litigation, as the case may be) where the litigant may be prevented from refiling because the statute of limitations expired if the action is dismissed. Prematurely disallowing the claims would likely bar AVCO from recovery under the Plan if the Texas Judgment is reversed.

-15-

be revived and the Court will make a determination on the merits of the Summary Judgment Motion in light of the final, unappealable Texas Judgment.

### iii. Effect of staying the claims litigation on lawsuits pending in other courts

The continued stay of the claims litigation in this Court will have no appreciable effect on lawsuits pending in other courts. If the Pennsylvania lawsuit is remanded to the Pennsylvania state court (or even if the Pennsylvania Bankruptcy Court keeps the lawsuit) both parties are free to proceed in that venue in whatever manner they choose. This Court speculates that the Debtor might pursue a summary judgment in Pennsylvania just as it has done here. In that case, a further stay by this Court will have no impact. Should the Pennsylvania Bankruptcy Court transfer the Pennsylvania lawsuit to this Court, the lawsuit may be stayed along with the other claims litigation. This may impact the Debtors by delaying an ultimate resolution to the Pennsylvania lawsuit.

The Court is unaware of any recent developments in the Ohio lawsuit and believes its decision in this proceeding will not impact that litigation. Further, to the Court's knowledge, none of the Debtor entities are named in the Florida lawsuit not have been named as a third-party defendant in a related lawsuit. Therefore, a continued stay will not impact either of these lawsuits.

### iv. Impact of stay on other Class 5 claimants

While a continued stay of the claims litigation may technically impact Class 5 claimants with allowed claims, as a practical matter they will likely not be permanently, irreversibly or unforeseeably affected. As it currently stands, pursuant to the Plan, the Debtors may either delay

the initial distribution to Class 5 claimants until the Objection to AVCO's claims is resolved or make the initial distribution to Class 5 claimants less any reserve set aside for AVCO's claims. In either case, Class 5 claimants will not be happy but they also should not be surprised. The $10 million "pot" is actually a promissory note executed by the Reorganized Debtor from which Class 5 claimants will receive a pro rata equity interest based on the amount of their claim(s). The note matures at the earlier of five (5) years from the Effective Date of the Plan or the date that cash dividends or liquidation preference payments are paid on the New Preferred Stock. Any actual cash payments on the note could potentially be five years away, far longer than the Court foresees an ultimate resolution of the claims litigation.

If the initial distribution is made while the *Objection to Claim* is pending, Class 5 claimants will obviously receive (at least initially) only a portion of what they would receive if AVCO's claims were disallowed. However, based on the clear terms of the Plan, Class 5 claimants knew, or should have known, the effect AVCO's claims could potentially have on recovery of their claims. That is, the actual amount of their pro rata share of $10 million "pot" would likely be uncertain until the AVCO claim was resolved. If AVCO's claims are ultimately disallowed by this Court, the reserve set aside for AVCO will be distributed to the Class 5 claimants. If, on the other hand, the AVCO claim is ultimately allowed, the distribution to other Class 5 claimants will be diluted by the distribution to AVCO.

Alternatively, the Debtor may choose to defer the initial distribution on allowed Class 5 claims pending resolution of the *Objection to Claim*. Although doing so may delay distribution to Class 5 claimants, it would give those claimants a clearer picture of where they stand.

-17-

Case 04-08130-TOM11    Doc 2071    Filed 07/05/05    Entered 07/05/05 11:28:07    Desc
Main Document    Page 17 of 19

Therefore, although the Court finds there is an adverse impact on the Class 5 claimants by staying the claims litigation, it was foreseeable, in fact likely, and not substantial.

### 2. Power of this Court to control its docket

A bankruptcy court, as does any court, has the inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254-255, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936). Incidental to this power is a court's power to stay proceedings on its own docket. Id. How best to control the court's docket is a matter of judicial discretion. See Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1, 21 n.23 (1983)(citing Landis). Thus, this Court's power to stay Citation's *Motion for Partial Judgment on Debtors' Objection to Claim* pending the outcome of the Texas appeal(s) is unquestioned. This Court has weighed the pros and cons of staying the litigation and finds that staying the litigation substantially limits federal judicial resources.

Therefore, for the foregoing reasons and this Court's inherent power to control its own docket, the Debtor's *Motion for Ruling on Debtors' Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* is **DENIED**.

It is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.) The Debtors' *Motion for Ruling on Debtors' Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* is **DENIED**; and

2.) The Debtors' *Motion for Partial Summary Judgment on Debtors' Objection to Claims of AVCO Corporation* is **STAYED** pending final resolution of the Texas Judgment; and

-18-

Case 04-08130-TOM11    Doc 2071    Filed 07/05/05    Entered 07/05/05 11:28:07    Desc Main Document    Page 18 of 19

3.) The Debtors' *Objection to Proof of Claim of AVCO Corporation* is **STAYED** pending final resolution of the Texas Judgment; and

4.) AVCO's *Motion for Estimation of its Claim for Purposes of Allowance Pursuant to 11 U.S.C. 502(c)* is **STAYED** pending final resolution of the Texas Judgment.

Dated this the 5th day of July, 2005.

                                            **/s/ Tamara O. Mitchell**
                                            TAMARA O. MITCHELL
                                            United States Bankruptcy Judge

TOM:jdg

xc:    Michael L. Hall, Attorney for the Debtors
        Jesse Vogtle, Attorney for the Claimant