IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CITATION CORPORATION, et al.,[1] | ) | Case No. 04-08130 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MEMORANDUM OF MILLER BUCKFIRE & CO., LLC IN SUPPORT OF
ITS FINAL FEE APPLICATION AND IN RESPONSE TO OBJECTIONS**

Dated: October 12, 2005

**ADAMS & REESE/LANGE SIMPSON LLP**
2100 Third Avenue North, Suite 1100
Birmingham, Alabama 35203
(205) 250-5000
(205) 250-5034

and

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Co-Counsel for Miller Buckfire & Co., LLC

---

[1] In addition to Citation Corporation, the Debtors include the following entities: (i) Citation Holding Company; (ii) Berlin Foundry Corporation; (iii) Bohn aluminum, Inc.; (iv) Castwell Products, Inc.; (v) Citation Precision, Inc.; (vi) HI-TECH, Inc; (vii) Iroquois Foundry Corporation; (viii) ISW Texas Corporation; (ix) Mansfield Foundry Corporation; (x) OBI Liquidating Corp.; (xi) Texas Steel Corporation; (xii) TSC Texas Corporation; (xiii) Citation Aluminum, LLC; (xiv) Citation Castings, LLC; (xv) Citation Grand Rapids, LLC; (xvi) Citation Lake Zurich, LLC; (xvii) Citation Michigan, LLC; (xviii) Citation Wisconsin Forging, LLC; (xix) citation Wisconsin, LLC; (xx) ITM Holding Co., LLC; (xxi) Interstate Southwest, Ltd.; (xxii) Texas Foundries, Ltd.; and (xxiii) MFC Liquidating Company, Ltd.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................................1

FACTS .......................................................................................................................................2

    A.    Miller Buckfire's Pre-Petition Retention ...................................................2

    B.    Approval of Miller Buckfire's Retention in the Debtors' Chapter 11 Cases...........5

    C.    The Final Fee Application ..........................................................................6

LEGAL STANDARD.................................................................................................................6

ARGUMENT .............................................................................................................................9

    A.    Miller Buckfire's Services Were Necessary And Beneficial To The Debtors And Added Substantial Value to these Cases ........................................9

    B.    The Restructuring Fee Is At Or Below The Amount Comparable Investment Banker Would Have Charged For Comparable Services ........................................9

    C.    The Objections Are Without Merit and Should Be Overruled .............................11

        1.    The Chapter 11 Cases Did Not Follow An Unexpected Path...................11

        2.    Miller Buckfire Provided All Of The Services That It Agreed To Provide .......................................................................................................13

        3.    The Lodestar Approach Is Not Appropriate, And In Any Event The Objectors' Lodestar Calculations Are Not Accurate ...............................15

EXPENSES................................................................................................................................19

CONCLUSION..........................................................................................................................21

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Ames Department Stores, Inc.*, 76 F.3d 66 (2d Cir. 1996)..................................7, 16

*In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833 (3d Cir. 1994) .....................7, 16

*In re Gillett Holdings, Inc.*, 137 B.R. 452 (Bankr. D. Colo. 1991) .........................16, 20

*In re Gillett Holdings, Inc.*, 137 B.R. 475 (Bankr. D.Colo. 1992) .................................16

*In re Globe Holdings, Inc. and Globe Manufacturing Corp.*, BK-01-70116-CMS-11, BK 01-70115-CMS (Bankr. N.D. Ala. January 17, 2002).............................................8

*Grant v. George Schumann Tire & Battery Company*, 908 F.2d 874 (11th Cir. 1990)................15

*In re Intelogic Trace, Inc.*, 188 B.R. 557 (Bankr. W.D. Tex. 1995)....................................8, 17, 18

*In re Joan and David Halpern Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd 2000 WL 1800690 (S.D.N.Y.).............................................................................17

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)....................................13

*In re Landmark Distributors, Inc.*, 195 B.R. 837 (Bankr. D.N.J. 1996)............................................7

*In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D.Md. 2000) ..............................8

*Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).........15, 16

*Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. et al., (In re Hillsborough Holdings Corp., et al.)*, 127 F.3d 1398 (11th Cir. 1997) ............................................7

*In re UDC Homes, Inc.*, 203 B.R. 218 (Bankr. D. Del. 1996) ....................................................8

*In re UNR Indus., Inc.*, 986 F.2d 207 (7th Cir. 1993)...................................................................16

*In re United Artists Theatre Company*, 315 F.3d 217 (3d Cir. 2003)........................................7, 16

*Zolfo Cooper & Co. v. Sunbeam-Oster Company, Inc.*, 50 F.3d 253 (3d Cir. 1995) ...............7, 16

## STATUTES

11 U.S.C. § 330(a)(1)..............................................................................................6, 7

124 Cong. Rec. 33,994 (1978)..........................................................................................7

H.R. Rep. No. 95-595 (1977).........................................................................................7

Case 04-08130-TOM11    Doc 2345    Filed 10/12/05    Entered 10/12/05 17:39:27    Desc
Main Document    Page 4 of 33

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | Chapter 11 |
|  | ) |  |
| CITATION CORPORATION, et al.,[1] | ) | Case No. 04-08130 |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## MEMORANDUM OF MILLER BUCKFIRE & CO., LLC IN SUPPORT OF ITS FINAL FEE APPLICATION AND IN RESPONSE TO OBJECTIONS

Miller Buckfire & Co., LLC ("Miller Buckfire") submits this memorandum of law in support of its fifth and final application for allowance of compensation and reimbursement of expenses, dated July 15, 2005 (the "Application") and in response to the objections (collectively, the "Objections") filed by: (a) above-captioned debtors (the "Debtors"); (b) JPMorgan Chase Bank, N.A., as agent for the pre-petition lenders (collectively, the "Banks"); and (c) the Bankruptcy Administrator for the Northern District of Alabama (the "BA", and together with the Debtors and the Banks, the "Objectors").

## PRELIMINARY STATEMENT

The record is clear that from the outset, the Debtors and the Banks expected these cases to proceed down a path towards a standalone reorganization involving a debt for equity conversion. Moreover, the parties agreed that unless the Debtors moved rapidly through the

---

[1] In addition to Citation Corporation, the Debtors include the following entities: (i) Citation Holding Company; (ii) Berlin Foundry Corporation; (iii) Bohn aluminum, Inc.; (iv) Castwell Products, Inc.; (v) Citation Precision, Inc.; (vi) HI-TECH, Inc; (vii) Iroquois Foundry Corporation; (viii) ISW Texas Corporation; (ix) Mansfield Foundry Corporation; (x) OBI Liquidating Corp.; (xi) Texas Steel Corporation; (xii) TSC Texas Corporation; (xiii) Citation Aluminum, LLC; (xiv) Citation Castings, LLC; (xv) Citation Grand Rapids, LLC; (xvi) Citation Lake Zurich, LLC; (xvii) Citation Michigan, LLC; (xviii) Citation Wisconsin Forging, LLC; (xix) citation Wisconsin, LLC; (xx) ITM Holding Co., LLC; (xxi) Interstate Southwest, Ltd.; (xxii) Texas Foundries, Ltd.; and (xxiii) MFC Liquidating Company, Ltd.

chapter 11 process, there would be a significant reduction in the value of the Debtors' business enterprise owing to forfeited new business bidding opportunities and the $2 million per month administrative cost of the chapter 11 professionals. In fact, the Debtors retained Miller Buckfire, in large part, to help drive these cases towards a speedy result.

While all bankruptcy cases are a collective effort, Miller Buckfire took the lead in establishing an aggressive critical path timeline to move these cases forward expeditiously. Once on that path, Miller Buckfire played a critical role in marshalling the resources of the Debtors to drive towards a rapid conclusion. In doing so, not only did Miller Buckfire provide the services it had contracted to provide in its Engagement Letter (as defined below), but, at the request of the Debtors' management, it played a much more expansive role than is often the case principally to help expedite the process.

These efforts were successful. The Debtors were able to emerge from chapter 11 protection in May 2005, just eight months after the commencement of these cases. Notwithstanding this backdrop of success, the Banks, the Debtors (at the behest of the Banks) and the BA have decided to object to the amount of Miller Buckfire's compensation.

Miller Buckfire respectfully submits that the $3.5 million Restructuring Fee that it seeks is consistent with market rates, and that Miller Buckfire provided valuable and necessary services in the Debtors' chapter 11 cases. Miller Buckfire asks that the Objections be overruled and that the Application be granted.

## FACTS

A.  **Miller Buckfire's Pre-Petition Retention**

Citation hired Miller Buckfire pursuant to an engagement letter (the "Engagement Letter") dated July 30, 2004. The Engagement Letter specified the financial advisory and investment banking services that Miller Buckfire would provide in connection with a possible

Restructuring or Sale, and it directed Miller Buckfire to "ensure the fair treatment of all of [Citation's] stakeholders in connection with any [] Restructuring and/or Sale." Engagement Letter, p. 1. "Restructuring" is defined in the Engagement Letter as "any recapitalization or restructuring" of Citation's indebtedness, including any restructuring accomplished through a "conversion" of such indebtedness pursuant to a confirmed plan of reorganization or by other means. Id. at p. 2.

The Engagement Letter provided that Miller Buckfire would be paid $150,000 upon execution of the Engagement Letter, and a $3.5 million restructuring fee (the "Restructuring Fee") upon the consummation of a Restructuring. Beginning as of August 30, 2004, Miller Buckfire was also entitled to a monthly advisory fee of $150,000 (the "Monthly Advisory Fees"). Id. at p. 4. Miller Buckfire agreed to credit 100% of the Monthly Advisory Fees against the Restructuring Fee, effectively capping the amount it could receive at $3.5 million. Id.

The fees set forth in the Engagement Letter are consistent with Miller Buckfire's customary practice and the customary practices of other investment banks. Miller Buckfire, and other investment banks, do not charge for their services on an hourly basis. See Affidavit of Durc Savini accompanying this Memorandum of Law (the "Savini Affidavit") at ¶ 4. Investment banks customarily charge fixed monthly fees plus additional fees that are payable upon the consummation of a transaction or event (such as a restructuring, a sale or a financing). Id. Where an investment banker is hired to assist with restructurings, the restructuring fee typically is calculated as a percentage of the face amount of outstanding debts. Id. The restructuring fee usually is equal to approximately one percent of a company's total outstanding debt, although the percentage can be less for companies with very large outstanding debt (generally in excess of $1 billion). Id.

- 3 -

The total outstanding debt in these cases was approximately $475 million. <u>See</u> Transcript, November 15, 2004 Hearing, Direct Examination of Durc Savini, p. 108, lines 7-8.[2] Based upon a review of cases with debt outstanding similar to that of the Debtors, Miller Buckfire originally proposed a Restructuring Fee of $4.6 million. <u>Id</u>. at p. 108, lines 17-19. Miller Buckfire also provided examples of the restructuring fees that had been paid in comparable cases which demonstrated the fees it proposed were in line with market rates.

After a series of negotiations among Miller Buckfire, the Debtors' Chief Financial Officer, the Debtors' board of directors and the pre-petition lenders, Miller Buckfire agreed to reduce the proposed Restructuring Fee to $3.5 million, representing a reduction of more than $1 million dollars. <u>Id</u>. at p. 108, lines 20-21. As a result of this negotiation, the Restructuring Fee was actually at slightly below market terms for investment banking services of the kind provided by Miller Buckfire and other restructuring investment bankers in other comparably sized cases. Savini Affidavit at ¶ 5; <u>cf</u>. Transcript, November 15, 2004 Hearing, Cross Examination of Charles Bloome, p.101, lines 20-25.

The Engagement Letter described the kinds of services that Miller Buckfire agreed to provide in connection with a potential Restructuring or a Sale. <u>See</u> Engagement Letter at pp. 1-3. However, the Engagement Letter also recognized that most of the listed services would only be provided to the extent they were necessary and to the extent they were actually requested by the Debtors. <u>Id</u>. Citation also acknowledged in the Engagement Letter that "the hours worked, the results achieved and the ultimate benefit to [Citation] of the work performed, in each case, in connection with this engagement, may be variable, and that [Citation] and [Miller Buckfire] have

---

[2] All relevant pages of the Transcript referred to in this Memorandum of Law are annexed hereto as <u>Exhibit G</u>.

- 4 -

taken this into account in setting the fees hereunder." <u>Id.</u> at p.4. Finally, Citation agreed that the fees payable to Miller Buckfire under the terms of the Engagement Letter were reasonable. <u>Id.</u>

B.  **Approval of Miller Buckfire's Retention**
    <u>**in the Debtors' Chapter 11 Cases**</u>

On September 18, 2004 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Alabama (the "Bankruptcy Court"). On or about October 1, 2004, the Debtors' filed their application (the "Retention Application") (Docket No. 161) for authority to retain Miller Buckfire as their financial advisor and investment banker in these chapter 11 cases on the terms conditions set forth in the Engagement Letter, including the proposed fees. <u>See</u> Retention Application at ¶ 2.

Several objections were filed to the Retention Application. At the hearing on the Retention Application, each of the objections were overruled, withdrawn or, with respect to non-compensation matters, sustained. Recognizing that Miller Buckfire was being retained and paid a flat monthly fee and a contingent transaction fee but requiring such fee be subject to reasonableness under section 330 of the Bankruptcy Code, this Court directed Miller Buckfire and the BA to work out an acceptable form of fee application consistent with industry standards. Transcript of November 15, 2005 Hearing, p. 98, lines 4-11.

After extensive negotiations with the BA regarding the manner and format of the invoices to be submitted with the fee applications, an order was entered by this Court approving Miller Buckfire's retention (the "Retention Order") (Docket No. 789) and annexing the form of invoice required to be filed by Miller Buckfire as Exhibit A thereto. A copy of the Retention Order is annexed hereto as <u>Exhibit A</u>. Specifically, the Retention Order authorized the Debtors jointly and severally to employ and retain Miller Buckfire on the terms and conditions of the

- 5 -

3016773_6

Engagement Letter as clarified and/or modified by the Retention Order. The Retention Order

overruled all objections seeking to reduce fees set forth in the Engagement Letter. Retention

Order at ¶ 5.

C.      **The Final Fee Application**

As set forth in the Application, which is incorporated herein by reference, Miller

Buckfire is seeking approval of its Restructuring Fee in the amount of $3.5 million and total

expenses in the amount of $180,215.26. In accordance with the terms of the Engagement Letter,

the Debtors are required to pay Miller Buckfire an additional $2,291,128.45, which equals the

Restructuring Fee in the amount of $3.5 million, less the Monthly Advisory Fees paid to date by

the Debtors in the amount of $1,189,622.90, plus the unpaid expenses to be paid by the Debtors

in the amount of $34,803.22, less the remaining pre-petition retainer held by Miller Buckfire in

the amount of $54,041.87. See Amended Table, annexed hereto as Exhibit B, and filed with this

Court on September 23, 2005 (Docket No. 2316).

## LEGAL STANDARD

Section 330(a)(1) of the Bankruptcy Code authorizes the Bankruptcy Court to award ". . .

reasonable compensation for actual, necessary services rendered by . . . the . . . professional

person . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1). Section

330(a)(3) provides that:

> [i]n determining the amount of reasonable compensation to be
> awarded, the court shall consider the nature, the extent, and the
> value of such services, taking into account all relevant factors,
> including (A) the time spent on such services; (B) *the rates
> charged for such services*; (C) *whether the services were
> necessary to the administration of, or beneficial at the time at
> which the service was rendered toward the completion of, a case
> under this title*; (D) whether the services were performed within a
> reasonable amount of time commensurate with the complexity,
> importance, and nature of the problem, issue, or task addressed;

- 6 -

3016773_6

and (E) *whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title*.

11 U.S.C. §330(a)(3) (emphasis added).

One of the key policies underlying section 330 is that professionals in bankruptcy cases should be compensated commensurate with similar practitioners outside the bankruptcy context. See H.R. REP. NO. 95-595, at 330 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6286; 124 CONG. REC. 33,994 (1978), reprinted in 1978 U.S.C.C.A.N. 6505, 6511 (statement of Senator DeConcini: the policy of §330 "is to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services other than in a case under title 11"). Otherwise, the failure to award professionals in bankruptcy cases compensation the same as their non-bankruptcy counterparts would discourage competent professionals from participating in bankruptcy cases. See H.R. REP. NO. 95-595, at 330 (1977), reprinted in 1978 U.S.C.C.A.N. 5787.

Courts therefore look to market practices to determine the reasonableness of a professional's fees. In re United Artists Theatre Company, 315 F.3d 217, 229 (3d Cir. 2003) (§ 330 "takes a 'market-driven' approach") (Ambro, J.) (internal citations omitted); Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. et al., (In re Hillsborough Holdings Corp., et al.), 127 F.3d 1398, 1403 (11th Cir. 1997) (Campbell, J.) (citing legislative history); In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 849 (3d Cir. 1994) (Becker, J.) ("cost of comparable services factor has an overarching role to act as a guide to the value of the services rendered").[3]

---

[3]  See also In re Ames Department Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996) (Van Graafeiland, J.) (citing legislative history that "compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases"); Zolfo Cooper & Co. v. Sunbeam-Oster Company, Inc., 50 F.3d 253, 258 (3d Cir. 1995) (Scirica, J.) (stating that § 330 presents a "'market driven' approach' . . . in which the cost of comparable services is the most important of the listed

- 7 -

Where, as here, a professional seeks a flat transaction-based fee, the Court should focus primarily on evidence as to the reasonableness of the proposed fee in light of customary market practices. See In re Intelogic Trace, Inc., 188 B.R. 557, 559 (Bankr. W.D. Tex. 1995) (court should "compare the fee requested to what (and whether) the marketplace pays for such services in the nonbankruptcy context"); In re UDC Homes, Inc., 203 B.R. 218, 222 (Bankr. D. Del. 1996) (court awarded $3.61 million restructuring fee after determining services were reasonable and necessary and based upon a market rate investment banker would charge in non-bankruptcy context).

Of particular note in this district is Judge Stilson's decision in In re Globe Holdings, Inc. and Globe Manufacturing Corp., BK-01-70116-CMS-11, BK 01-70115-CMS (Bankr. N.D. Ala. January 17, 2002) ("Globe"). In Globe, Judge Stilson ruled that a transaction fee in the amount of $2,307,529.00, which was 4.4% of the total sales price of the debtor's assets of $52,290,000, was reasonable under section 330 notwithstanding the fact that the investment banker in that case, Rothschild Inc., spent only 60 days on the assignment. Judge Stilson accepted the expert report of Porter White & Company, Inc. which found that the proper standard for measuring the services of investment bankers in chapter 11 cases is what the market would pay that banker inside of chapter 11 and whether the creation of the contract underlying the fee was created by market forces, i.e., negotiated at arms-length by sophisticated parties. See In re Merry-Go-Round Enterprises, Inc., 244 B.R. 327 (Bankr. D.Md. 2000). A copy of the Globe decision and the Expert Report is annexed hereto as Exhibit C.

---

factors, the others being the nature, extent, and value of the services"); In re Landmark Distributors, Inc., 195 B.R. 837, 849 (Bankr. D.N.J. 1996) (Tuohey, J.) (citing Busy Beaver for proposition that market rate should be guide in determining value of services rendered).

- 8 -

**ARGUMENT**

A.    **Miller Buckfire's Services Were Necessary**
      **And Beneficial To The Debtors And Added**
      **Substantial Value to these Cases**

      While all bankruptcy cases are a collective effort, Miller Buckfire took the lead in establishing an aggressive schedule to move these cases forward. Miller Buckfire not only provided the services it had contracted to provide in its Engagement Letter, but, at the request of the Debtors' management, it performed additional services, including:

      (a) undertaking a comprehensive solicitation process for third-party exit financing;

      (b) negotiating a key employee retention program and management incentive plan with the Banks;

      (c) assisting the Debtors in obtaining a public debt rating from the rating agencies; and

      (d) preparing a liquidation analysis in connection with the Disclosure Statement.

      Annexed hereto as <u>Exhibit D</u> is a more detailed chart containing a description of the services that Miller Buckfire provided throughout these cases. These services were necessary and beneficial to the Debtors' estates. They enabled the Debtors to accomplish a speedy and efficient reorganization that put the Debtors on a sound financial footing and that minimized administrative costs.

B.    **The Restructuring Fee Is At Or Below The**
      **Amount Comparable Investment Banker Would**
      **Have Charged For Comparable Services**

      The Objectors do not contend that Miller Buckfire's services were unnecessary or that they did not benefit the estates. Instead, they argue that the Restructuring Fee is too high. <u>See</u> Debtors' Objection at ¶ 4; Banks' Objection at p. 1. As explained above, however, the

- 9 -

reasonableness of the Restructuring Fee should be determined by reference to market rates and market practices. The requested Restructuring Fee is consistent with market rates and customary market practices, and it should be approved.

Restructuring fees generally are equal to approximately one percent of a company's total outstanding debt, although the percentage can be less for companies with very large outstanding debt, generally in excess of $1 billion. Savini Affidavit at ¶ 4. The total outstanding debt in these cases was approximately $475 million. Transcript, November 15, 2004 Hearing, Direct Examination of Durc Savini, p. 108, lines 7-8. Based on the outstanding debts, Miller Buckfire originally proposed a Restructuring Fee of $4.6 million. Id. at p.108, lines 17-19. Following a series of negotiations involving the Debtors, the Debtors' Board of Directors and the Banks, Miller Buckfire agreed to reduce its Restructuring Fee to $3.5 million, which is approximately .74% of the outstanding debts. Id. at p. 108, lines 20-21; see also Savini Affidavit at ¶ 5.

Furthermore, as set forth in the Savini Affidavit, the Restructuring Fee and Monthly Advisory Fees are in all respects consistent with the current market for restructuring and advisory fees, and similar to the fees that Miller Buckfire charges to its clients for services in other similar engagements. Savini Affidavit at ¶ 6. In this regard, annexed hereto as Exhibit E is a chart listing the fees that Miller Buckfire and others entities have received for financial advisory and investment banking services rendered in comparable chapter 11 cases.

Miller Buckfire would not have agreed to be retained as the Debtors' financial advisor and investment banker if the Debtors had not agreed to pay the Restructuring Fee. Savini Affidavit at ¶ 7. The Engagement Letter was the product of arm's-length negotiations by sophisticated parties. Indeed, the Restructuring Fee was vigorously negotiated by Chuck Bloome (the former Chief Financial Officer of the Debtors with input from the Debtors' Board of

Directors) and the Banks. <u>Id.</u> at ¶ 7; <u>see also</u>, Transcript, November 15, 2004 Hearing, Cross

Examination of Charles Bloome, p.101, lines 20-25. The Restructuring Fee is consistent with

market rates and customary market practices, and it should be approved.

C.     **The Objections Are Without Merit and**
       **Should Be Overruled**

The Banks filed an objection (the "Banks' Objection") (Docket No. 2330) to the

Application, arguing that Miller Buckfire was not required to provide "many, possibly most, of

the services contemplated by the [Engagement] Agreement" and that a "lodestar" calculation

should be used to determine the fee. Banks' Objection at ¶¶ 7 & 10. The Debtors (under a new

board of directors now appointed by the Banks) also have objected to the payment of the

Restructuring Fee (the "Debtors' Objection") (Docket No. 2322). The crux of the Debtors'

Objection is that Miller Buckfire delivered all of the services requested of it and did so

competently and professionally, but these cases were shorter and less complicated than originally

anticipated. Finally, the BA has objected to the payment of the Restructuring Fee (the "BA

Objection") (Docket No. 2333), alleging that Miller Buckfire did not show entitlement to such a

fee because "ownership of the debtor was essentially turned over to the debtor's existing secured

lenders." BA Objection at ¶ 7.

Miller Buckfire respectfully submits that each of the Objections should be overruled.

1.     **The Chapter 11 Cases Did Not Follow An**
       **Unexpected Path**

The Debtors argue that the parties contemplated "an elaborate, lengthy and complex

Chapter 11 restructuring" that would involve either a third-party sale process or a complex

restructuring of Citation. Debtor's Objection at ¶ 7. However, those were only some of the

possible courses that the Debtors' restructuring could have taken, and they were not the most

likely course.

- 11 -

The prospect of a debt-to-equity conversion was clear from the outset of Miller Buckfire's engagement. The Debtors owed secured obligations to the Banks that exceeded $325 million and additional, unsecured obligations of approximately $214 million. As reflected in the Disclosure Statement, the enterprise value of the Debtors was ultimately determined to be approximately $300 million. In addition, the Debtors' cash flow could not cover both operating costs and debt service. The most efficient and logical restructuring, under these circumstances, was the debt-to-equity conversion that occurred. Savini Affidavit at ¶ 8.

The parties recognized that a lengthy chapter 11 case was possible, but it was neither necessary nor desirable. The parties agreed that unless the Debtors moved rapidly through the chapter 11 process, there would be a significant reduction in the value of the Debtors' business enterprise from forfeited new business bidding opportunities and the administrative costs of the chapter 11 proceedings. Id. In fact, the Debtors in large part retained Miller Buckfire to help drive these cases towards a speedy result. Id. It was clear from the beginning that the best result for the Debtors and creditors was an abbreviated chapter 11 process which would be completed no later than the Spring of 2005. Id. The Debtors ultimately reorganized successfully, and they were able to do so quickly and efficiently. Miller Buckfire should hardly be punished because these cases did not take longer.

Similarly, the possibility of a sale to a third party was considered by the parties, but not pursued in any significant manner. However, the fact that a Sale was not pursued is not relevant to Miller Buckfire's fee application, which seeks a Restructuring Fee (not a Sale Transaction Fee).

Restructuring fees customarily are fixed fees. Savini Affidavit at ¶ 10. They do not vary based on the length or difficulty of the case, the hours worked, the form in which a restructuring

- 12 -

occurs, or the types of services required. Id. The investment banker agrees, in return for the restructuring fee, to provide whatever restructuring services the case requires. Id. The payment of a fixed restructuring fee (rather than a fee that varies depending on the particular type of restructuring that occurs) encourages the investment banker to assist in arranging the restructuring that is best suited to the needs of the debtor and its creditors, without providing a financial incentive to favor any particular form of restructuring. Similarly, the payment of a fixed fee (rather than a fee that is tied to the amount of work that is done, or the length of the chapter 11 case) also provides financial incentives to bring about a restructuring as quickly and efficiently as possible. Id. The fact that monthly fees are credited against the restructuring fee similarly discourages delay and encourages the resolution of cases as quickly and efficiently as possible.

In this case, the Engagement Letter reflected the fact that the course of the Debtors' restructuring could not be predicted with complete accuracy. The parties agreed in the Engagement Letter that "the hours worked, the results achieved and the ultimate benefit to [Citation] of the work performed, in each case, in connection with this engagement, may be variable, and that [Citation] and [Miller Buckfire] have taken this into account in setting the fees hereunder." Engagement Letter at p.4. It is not correct for the Banks and the Debtors to argue now that these chapter 11 cases proceeded in a way that was not contemplated by the Engagement Letter.

2. **Miller Buckfire Provided All Of The Services That It Agreed To Provide**

Miller Buckfire does not concede that the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), apply to a determination of whether an investment banker's fees are reasonable, because that case specifically addressed the hourly fees

- 13 -

of counsel.  Nonetheless, in each of its fee applications and in its Application, Miller Buckfire has described how such factors weigh in its favor.  Application at ¶ 31.

The Objectors argue that Miller Buckfire was not required to perform some of the potential services that were listed in the Engagement Letter.  Debtor's Objection at ¶ 4; Bank's Objection at ¶ 7.  However, that is always true in any chapter 11 case.  In addition, that possibility was recognized in the Engagement Letter itself.  The Engagement Letter listed services that Miller Buckfire agreed to provide, but it also recognized that most of the listed services would only be provided to the extent they were necessary, and only to the extent they were actually requested by the Debtors.  Engagement Letter at pp. 1-3.

Miller Buckfire provided all of the services that were appropriate to these cases and that Miller Buckfire was called upon to provide under the Engagement Letter.  The Application includes seven pages of detail as to the services that Miller Buckfire provided, and the Objectors do not contest that those services were provided.  Miller Buckfire also kept the Banks apprised of the services that it was performing.  Annexed hereto as Exhibit F are emails from Miller Buckfire to the Debtors and from Miller Buckfire to the financial advisors to the Banks, setting forth Miller Buckfire's commitment to provide a wide-array of services.

In fact, Miller Buckfire went beyond the limits of its Engagement Letter.  For example, Miller Buckfire undertook a comprehensive solicitation process to obtain third-party "exit" financing for the Debtors.  Savini Affidavit at ¶ 12.  Miller Buckfire also assisted the Debtors in obtaining a public debt rating from the rating agencies, and prepared with management a liquidation analysis necessary to confirm the plan of reorganization.  Id.

The Debtors ultimately pursued a debt-for-equity conversion, but only after Miller Buckfire assisted in the evaluation of other options and in the determination that this was the best

- 14 -

option for the Debtors to pursue. Savini Affidavit at ¶ 13. Miller Buckfire performed its

services timely and professionally and in a manner that permitted competing creditors to adopt

and support the Debtors' views as to the value of the Debtors' reorganized businesses and the

division of that value under the plan of reorganization.

3.      **The Lodestar Approach Is Not Appropriate,
And In Any Event The Objectors' Lodestar
Calculations Are Not Accurate**

The Objectors incorrectly ask this Court to follow the lodestar approach as set forth in

Grant v. George Schumann Tire & Battery Company, 908 F.2d 874 (11th Cir. 1990) (Johnson, J)

and Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988)

(Forrester, J.) in determining the reasonableness of Miller Buckfire's Monthly Advisory Fees and

Restructuring Fee. Debtors' Objection at ¶ 12; Banks' Objection at ¶ 10. The Objectors assume

that multiplying a reasonable hourly rate to the reasonable number of hours expended is the

appropriate way to determine the reasonableness of Miller Buckfire's fees. Debtors' Objection

at ¶ 11; Banks' Objection at ¶ 10. There are two reasons why this argument is incorrect.

First, it is not appropriate to apply a "lodestar" calculation where, as here, a party does

not charge for its services on an hourly basis. Both Grant and Norman specifically addressed the

lodestar approach in estimating the value of the services that a lawyer provided pursuant to an

hourly fee arrangement. Grant, 908 F.2d at 879 ("In an ordinary attorney's fee case, the court

arrives at a fee by multiplying the attorney's reasonable hourly rate by the number of hours

reasonably expended.") (emphasis added); Norman, 836 F.2d at 1299 ("the starting point in any

determination for an objective estimate of the value of a lawyer's services is to multiply hours

reasonably expended by a reasonable hourly rate.") (citations omitted) (emphasis added). Here,

however, Miller Buckfire does not seek approval of a fee that is based on the number of hours

worked.

- 15 -

The Debtors cite only one case, In re Gillett Holdings, Inc., 137 B.R. 475 (Bankr. D.Colo. 1992), as an "example of a court applying the lodestar method in combination of with the Johnson factors in awarding fees to an investment banker in the bankruptcy context under section 330." Debtors' Objection at ¶11. At the outset of the Gillett bankruptcy case, the debtor sought to employ two investment bankers. The court initially refused to approve monthly fees and transaction fees, notwithstanding evidence that these terms were "customary" in investment banking. In re Gillett Holdings, Inc. 137 B.R. 452, 454-455 (Bankr. D. Colo. 1991) (Brooks, J.). The court held that investment bankers should be subject to the same hourly fee standards that govern other professionals who appear in Chapter 11 cases, notwithstanding different practices outside chapter 11. 137 B.R. at 455-57, 459; see also 137 B.R. at 489.

The Gillett decision therefore insisted that investment bankers charge on an hourly basis and rejected the idea that market practices should govern. In this respect, Gillett has been contradicted by numerous later authorities, all of which have confirmed that market practices should govern the determination of reasonableness under Section 330. In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); In re Ames Department Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc., 50 F.3d 253, 258 (3d Cir. 1995); In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 855 (3d Cir. 1994); In re UNR Indus., Inc., 986 F.2d 207, 209 (7th Cir. 1993).

The Eleventh Circuit recognized in Norman that hourly rates may not always be relevant to every professional, and that a court "may wish to consider any of the Johnson factors to the extent that they suggest that comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court." 836 F.2d at 1299-1300. This statement is particularly applicable to investment bankers. Courts

- 16 -

have recognized that in judging the reasonableness of a transaction fee certain "considerations drop away, such as the 'time spent' or the 'rates charged.'" In re Intelogic Trace, Inc., 188 B.R. at 559. Instead, of looking to hourly rates, the court should "compare the fee requested to what (and whether) the marketplace pays for such services in the nonbankruptcy context." Id. at 560; see also In re Joan and David Halpern Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000) (approving as "reasonable terms" the debtor's payment of a monthly advisory fee, a success fee based upon a percentage of the refinancing of existing debt, and an indemnity agreement on behalf of investment advisor), aff'd 2000 WL 1800690 (S.D.N.Y.).

In fact, imputing an hourly rate in order to determine the reasonableness of fees under section 330 – and requiring investment bankers to justify fees on an hourly rate basis – would encourage all of the wrong things. As explained above, fixed fees are beneficial to all parties because they provide incentives to accomplish a restructuring in a quick and efficient manner. In the instant case, all of the relevant constituents agreed that the Debtors needed to emerge from chapter 11 protection by Spring 2005. The pre-petition secured lenders were quite concerned about these cases lasting past the Spring of 2005. Savini Affidavit at ¶ 9. Miller Buckfire assisted the Debtors in developing a case strategy and related critical path timeline to ensure a speedy exit from chapter 11. Id. Thus, knowing that the Debtors intended a relatively short reorganization process, the Debtors still sought approval of the Restructuring Fee and Monthly Advisory Fees because success could be measured by, among other things, whether the Debtors achieved this goal, not by how long the chapter 11 cases continued at an ongoing cost of $2 million per month.

Second, the lodestar calculations that the Objectors have submitted to the Court are flawed. The Objectors have calculated a hypothetical "hourly" rate for Miller Buckfire by

dividing each Monthly Advisory Fee by the number of hours worked in a given month. This assumes, however, that the Monthly Advisory Fees were the only compensation that was intended for the work that was done during each month. As explained above, the Restructuring Fee is also part of the expected compensation. As the Court stated in <u>Intelogic</u>:

> [A] 'success fee' is less a bonus than it is an incentive, designed to induce maximum return, on the theory that, but for the fee, the professional would not even have bothered to take on the engagement. Though the original agreement made between the parties is not controlling, it is at least a relevant piece of information, especially if the evidence also suggests arms'-length bargaining, relatively equal bargaining positions, and other indicia that the agreement falls within the range that the market might generate in the absence of bankruptcy.

188 B.R. at 560. The Monthly Advisory Fees are not the full compensation that Miller Buckfire expects for its work, and so it is improper to use only the Monthly Advisory Fees in calculating a theoretical "hourly rate" for Miller Buckfire's services.

The Objectors' calculations are also flawed because they consider only the hours spent after the filing of the Debtors' bankruptcy petitions. Miller Buckfire provided significant services during the period July 31, 2004 through September 17, 2004. The Monthly Advisory Fees earned during the pre-petition period are being credited against the Restructuring Fee. Thus, it would be disingenuous not to include the work performed and, the hours spent during the pre-petition period, when considering the reasonableness of the fees earned by Miller Buckfire in these cases.

Miller Buckfire generally does not keep time records outside the bankruptcy context. During the busiest months during the course of these cases, however, Miller Buckfire spent approximately 574 hours performing services for the Debtors. Professionals usually must spend more time (not less) in the weeks leading up to a large bankruptcy filing; here, it was no

- 18 -

different. Savini Affidavit at ¶ 15. It is reasonable to assume that Miller Buckfire worked in excess of 900 hours for the period July 31, 2004 through September 17, 2004. See Savini Affidavit at ¶ 15. During the course of these cases Miller Buckfire worked a total of 3,270.5 hours; adding approximately 900 hours to that number provides a total of 4,107.5 hours. Accordingly, Miller Buckfire submits, based on these figures, that the requested Restructuring Fee is reasonable, even if a "lodestar" calculation were to be used.

## EXPENSES

The BA has mainly objected to four categories of expenses: (a) travel time; (b) time spent on project category "Retention and Fee Applications"; (c) time spent on project category "Exit Financing"; and (d) attorneys' fees. This Memorandum only addresses the fourth category, attorneys' fees.

The BA has recommended that Miller Buckfire's attorneys' fees not be reimbursed as they do not benefit the Debtors estates. However, the Engagement Letter specifically states that the Debtors shall pay Miller Buckfire's reasonable out-of-pocket expenses, including all fees and expenses of Miller Buckfire's retained professionals. Engagement Letter at ¶ 3. Furthermore, at Miller Buckfire's retention hearing on November 15, 2005, the undersigned counsel specifically disclosed that the Debtors would be responsible for paying such counsel's fees. Transcript, November 15, 2005 Hearing at p.87-88. Indeed, this Court recognized that the Debtors' would pay Miller Buckfire's counsel's fees. Id. at p.88, lines 22-23 ("It is still estate money that is going to pay you."). The Court required undersigned counsel to submit an affidavit of disinterestedness, which they promptly prepared and filed with the Court.

Investment bankers customarily require their clients to reimburse expenses, including attorneys' fees. Savini Affidavit at ¶ 16. The undersigned counsel assisted the Debtors by helping to get Miller Buckfire retained. Specifically, counsel vigorously negotiated the form and

- 19 -

manner of the invoices with the BA and completed an extensive conflicts check and drafted an affidavit of disinterestedness as required by this Court. In addition, counsel assisted Miller Buckfire in respect of the BA's objections to its fee applications. Lastly, the Engagement Letter does not cap such fees or provide an estimate of such fees. If the Debtors had contemplated a certain number of hours that counsel to Miller Buckfire would expend or if the BA had an objection to payment of attorneys' fees, either party very well could have included a cap or estimate at the onset of these cases. See, e.g., In re Gillett, 137 B.R. at 455 (Smith Barney's counsel's fees included in engagement agreement and estimated to be no more than $7,500 a month). However, they did not.

- 20 -

## CONCLUSION

For all of the foregoing reasons, Miller Buckfire respectfully requests that this Court overrule each of the Objections and enter an order pursuant to section 330 of the Bankruptcy Code: (i) approving payment of the Restructuring Fee in the amount of $3.5 million; (ii) directing the Debtors to pay to Miller Buckfire the Restructuring Fee less the Monthly Advisory Fees paid to date by the Debtors in the amount of $1,189,622.90; (iii) approving and directing payment of expenses in the amount of $180,215.26 to the extent not already paid; and (iv) authorizing Miller Buckfire to apply the remaining pre-petition retainer held by Miller Buckfire in the amount of $54,041.87.

Dated: Birmingham, Alabama
October 12, 2005

Respectfully submitted,

**ADAMS & REESE/LANGE SIMPSON LLP**


By: /s/ Joe A. Joseph
Joe A. Joseph
Richard P. Carmody

Concord Center
2100 Third Avenue North, Suite 1100
Birmingham, Alabama 35203
(205) 250-5000
(205) 250-5034

and

**WILLKIE FARR & GALLAGHER LLP**
Matthew A. Feldman
Robin Spigel
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Co-Counsel for Miller Buckfire & Co., LLC

- 21 -

**Of Counsel:**

Adams and Reese/Lange Simpson LLP
2100 3rd Avenue North, Suite 1100
Birmingham, AL  35203
Telephone:  (205) 250-5000
Facsimile:  (205) 250-5034

and

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the entities or persons listed on the attached service list on this the 12th day of October 2005.

/s/ Robin Spigel
Robin Spigel

# SERVICE LIST

**NOTICE VIA ECF**

Michael Leo Hall
Derek F. Meek
Cathleen C. Moore
Janine L. Smith
Heather Lee
Marc P. Solomon
Counsel for Debtors
Burr & Forman LLP
420 N. 20th Street, Suite 3100
Birmingham, AL 35203
mhall@burr.com
dmeek@burr.com
cmoore@burr.com
jsmith@burr.com
hlee@burr.com
msolomon@burr.com

J. Thomas Corbett
Office of the Bankruptcy
Administrator
Robert S. Vance Fed. Bldg.
1800 5th Avenue North
Birmingham, AL 35203
jtom_corbett@alnba.uscourts.gov

Jayna Partain Lamar
Timothy M. Lupinacci
Matthew W. Grill
Brian R. Walding
Counsel for the Committee of
Unsecured Creditors
Maynard, Cooper & Gale P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
jlamar@mcglaw.com
tlupinacci@mcglaw.com
mgrill@mcglaw.com
bwalding@mcglaw.com

Charles L. Denaburg
Robert H. Adams
Kimberly B. Glass
Najjar Denaburg, P.C.
2125 Morris Avenue
Birmingham, AL 35203
Counsel for
JPMorgan Chase Bank
as Administrative Agent
Loan & Agency Services Group
radams@najjar.com
kglass@najjar.com

W. Clark Watson
Eric T. Ray
Counsel for Alabama Power
Company
Balch & Bingham LLP
1901 6th Ave. N., Suite 2600
P. O. Box 306
Birmingham, AL 35201
cwatson@balch.com
eray@balch.com

W. Clark Watson
Jesse S. Vogtle, Jr.
Eric T. Ray
Counsel for
AVCO Corporation
Balch & Bingham LLP
1901 6th Ave. N., Suite 2600
P. O. Box 306
Birmingham, AL 35201
cwatson@balch.com
jvogtle@balch.com
eray@balch.com

Edward J. Peterson
Danielle K. Greco
Counsel for H.I.G. Capital &
Bayside Capital
Counsel for Alabama Gas Co.
Bradley Arant Rose & White LLP
One Federal Place
819 5th Avenue N
Birmingham, AL 35203-2104
epeterson@bradleyarant.com
dgreco@bradleyarant.com

Lloyd C. Peeples III
U.S. Attorney's Office
1801 Fourth Avenue North
Birmingham, AL 35203
Representing the Internal
Revenue Service for Northern
District of Alabama
lloyd.peeples@usdoj.gov

W.L. Longshore, III
Longshore, Buck & Longshore P.C.
2009 Second Avenue North
Birmingham, AL 35203
Counsel for Willstaff World
Wide Staffing
billy3@longshorebuck.com

Gary P. Wolfe
Counsel for De Lage Landen
Wolfe Jones Boswell Wolfe
& Hamner
905 Bob Wallace Ave, Ste
100
Huntsville, AL 35801
bankruptcy@wjb-law.com

Henry A. Callaway
Counsel for The CIT Group/
Equipment Financing, Inc.
Hand Arendall, L.L.C.
Post Office Box 123
Mobile, AL 36604
hcallaway@handarendall.com

1

Jerry W. Schoel
Counsel for Dana Corporation
The Schoel Law Firm
Suite 260 East
2700 Highway 280 South
Birmingham, AL 35223
jschoel@schoellaw.com

Robert L. Shields, III
Counsel for Jefferson Iron
& Metal Brokerage, Inc.
The Shields Law Firm
2025 Third Avenue North
Massey Building, Suite 301
Birmingham, AL 35203
rls@bhamlawfirm.com

David B. Anderson
Ryan K. Cochran
Donna G. McGee
Counsel for Credit Suisse
First Boston
Walston Wells Anderson
& Bains LLP
One Federal Place
1819 5th Avenue North
Suite 1100
Birmingham, AL 35203
danderson@walstonwells.com
rcochran@walstonwells.com
dmcgee@walstonwells.com

Donald M. Wright
Stephen B. Porterfield
Counsel for Caterpillar, Inc.
Local Counsel for Foster &
Sear, LLP and McCurdy &
McCurdy, LLP
Sirote & Permutt, PC
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
dwright@sirote.com
sporterfield@sirote.com

Glen M. Connor
Counsel for United Steelworkers
of America, AFL-CIO-CLC
Whatley Drake, LLC
2323 Second Avenue North
P.O. Box 10647
Birmingham, AL 35202-0647
gconnor@whatleydrake.com

Lee R. Benton
Counsel for Wisconsin Lift
Truck, Corp.
Counsel for EnergyUSA TPC Corp.
Counsel for Rusal America
Corporation
Counsel for TXU Energy
Retail Company LP
Benton & Centeno LLP
2019 Third Avenue North
Birmingham, AL 35203
lee@bentonandcenteno.com

Mark P. Williams
Counsel for Refractory &
Insulation Supply, Inc.
Counsel for Ford Motor
Company
Norman Wood Kendrick &
Turner
Financial Center, Suite 1600
505 20th Street North
Birmingham, AL 35203
mpwilliams@nwkt.com

Michael Reed
Counsel for Grimes Central
Appraisal District
McCreary, Veselka, Bragg
& Allen, P.C.
5929 Balcones Drive, Ste 200
Austin, TX 78731
P.O. Box 26990
Austin, TX 78755
sragsdale@mvbalaw.co

James H. Rollins
Counsel for The CIT Group
/Equipment Financing Inc.
Holland & Knight LLP
Suite 2000, One Atlantic Ctr
1201 W. Peachtree Street
Atlanta, GA 30309-3400
jrollins@hklaw.com

Marion E. Wynne
Wilkins, Bankester, Biles &
Wynne, PA
Counsel for Baldwin
Industrial Construction, Inc.
P.O. Box 1367
Fairhope, AL 36532
twynne@wbbwlaw.com

Stephen P. Leara
Jay Clark
Wallace Jordan Ratliff & Brandt
Counsel for Liberty Mutual Ins Co
800 Shades Creek Pkwy
Suite 400
Birmingham, AL 35209
sl@wallacejordan.com
jc@wallacejordan.com

Andre' M. Toffel
Toffel & Altmann PC
Counsel for Vulcan Electro-
Coating Inc.
1929 3rd Ave N, Suite 400
Birmingham, AL 35203
atoffel@wwisp.com

2

Stephen Gross
Stephen R. Hertz
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
srgross@debevoise.com
srhertz@debevoise.com

John P. Whittington
Patrick Darby
Counsel for H.I.G. Capital &
Bayside Capital
Bradley Arant Rose & White
LLP
One Federal Place
819 5th Avenue N
Birmingham, AL 35203-2104
jwhittington@bradleyarant.com
pdarby@bradleyarant.com

Patrick Darby
Counsel for Alabama Gas Co.
Bradley Arant Rose & White
LLP
One Federal Place
819 5th Avenue N
Birmingham, AL 35203-2104
pdarby@bradleyarant.com

Robert B. Weiss
Counsel for General Motors
Corp.
Honigman Miller Schwartz &
Cohn LLP
2290 First National Building
Detroit, MI 48225
rweiss@honigman.com

Steven T. Holmes
Hunton & Williams LLP
Energy Plaza, 30th Floor
1601 Bryan Street
Dallas, TX 75201
Counsel for
TXU Energy Retail Co. L.P.
sholmes@hunton.com

Jean R. Robertson
Counsel for Beck
Aluminum Corp.
McDonald Hopkins Co. LPA
600 Superior Ave., E. Ste
2100
Cleveland, Ohio 44114-2653
jrobertson@mcdonaldhopkins.com

Marianne Goldstein Robbins
Counsel for Paper, Allied Industrial,
Chemical & Energy Workers
(PACE) Local 7-0366
Previant, Goldberg, Uelmen,
Gratz, Miller & Brueggeman,
S.C.
1555 N. RiverCenter Dr, # 202
P.O. Box 12993
Milwaukee, WI 53212
mgr@previant.com

Michael C. Hammer
Counsel for Visteon Corp.
Dickinson Wright PLLC
301 E. Liberty, Suite 500
Ann Arbor, MI 48104-2266
mhammer@dickinsonwright.com

Mr. David Boyle
Airgas, Inc.
259 Radnor-Chestor Road,
Suite 100
P.O. Box 6675
Radnor, PA 19087-8675
david.boyle@airgas.com

Leonard Klingbaum
Lauren Angerman
Counsel for Cana-Datum
Moulds Ltd & Toolcam
Technologies, Inc.
Morgan, Lewis & Bockius
LLP
101 Park Avenue
New York, NY 10178-0600
lklingbaum@morganlewis.com
langerman@morganlewis.com

John P. Dillman
Counsel for Angelina County
Linebarger Goggan Blair &
Sampson, LLP
P.O. Box 3064
Houston, TX 77253-3064
houston_bankruptcy@publicans.com

Bruce C. Bailey
Counsel for Porter Warner
Indus., Inc. c/o Doug Warner
Chambliss, Bahner & Stophel, P.C.
1000 Tallan Building
Two Union Square
Chattanooga, TN 37402-2502
bbailey@cbslawfirm.com

C. Hamilton Jarrett
Counsel for Technology
Capital Partners LLC
Conner Gwyn Schenck PLLC
Post Office Box 30933
Raleigh, NC 27622
hjarrett@cgspllc.com

Douglas J. Lipke, Esq.
Morgan R. Brazil, Esq.
Vedder Price Kaufman &
Kammholz PC
Counsel for Quality
TemPerm, Inc.
222 N. LaSalle St., Ste 2600
Chicago, IL 60601-1003
dlipke@vedderprice.com
mbrazil@vedderprice.com

Beverly H. Shideler
IBM Corporation
Two Lincoln Centre
Oakbrook Terrace, IL 60181
bhshide@us.ibm.com

4

Judy A. Cunningham
DENTSPLY International Inc
(fka Degussa-Ney Dental Inc)
World Wide Headquarters
Susquehanna Commerce Ctr -
West Bldg
221 W Phila St - Fifth Floor
York, PA 17405-0872
jcunningham@dentsply.com

Indoff, Inc.
Attn: Phil Webb
11816 Lackland Road
St. Louis, MO 63146
pwebb@indoff1.com

Vatana Rosa
Account Resolution
St. Paul Travelers Natl Accts
1 Tower Square - 5MN
Hartford, CT 06183-4044
vrosa@stpaultravelers.com

B. Gail Reese
Counsel for Aluminum
Resources Corporation
Wyatt, Tarrant & Combs LLP
2525 West End Ave Ste. 1500
Nashville, TN 37203
greese@wyattfirm.com

Mark S. Melickian
Counsel for Badger Technical Svcs
Gardner Carton & Douglas LLP
191 N Wacker Drive Ste 3700
Chicago, IL 60606-1698
mmelickian@gcd.com

John E. Murray
Counsel for Badger Technical Svcs
Gardner Carton & Douglas
LLP250 E Wisconsin Ave Ste
1800
Milwaukee, WI 53202-4299
jmurray@gcd.com

Constantine D. Pourakis
Salomon Green & Ostrow, PC
Counsel for VJ Technologies
485 Madison Ave 20th Floor
New York, NY 10022
Pourakis@sgolaw.com

Steven Hayes
Cotten Schmidt, LLP
420 Throckmorton Street
Suite 500
Ft. Worth, TX 76102
SHayes@cottenschmidt.com

Larry B. Ricke
Counsel for Farnam Street
Financial
Leonard, Street & Deinard, PA
150 South Fifth Street, Suite
2300
Minneapolis, MN 55402
larry.ricke@leonard.com

Leslie A. Epley
Crowell & Mooring LLP
Counsel for Liberty Mutual
Ins Co
1001 Pennsylvania Ave NW
Washington, DC 20004
lepley@crowell.com

Alan B. Rich
Baron & Budd PC
Counsel for certain persons with
asbestos-related injuries, creditors
and parties in interest
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
arich@baronbudd.com

Joshua A. Blakely
Counsel for Rock Transfer &
Storage, Inc.
Counsel for Richard Borys, Norman
Duszynski, Franklyn Esenberg,
Judith Hein, Constance Janikowski,
Marv Korup and Lawrence F.
Schuetz
Reinhart Boerner Van Deuren
1000 North Water Street
Suite 2100
P.O. Box 2965
Milwaukee, WI 53201-2965
jblakely@reinhartlaw.com

Steven M. Wachstein
Coolidge Wall Womsley &
Lombard
Counsel for US Inspection Svcs
33 West First Street, Suite 600
Dayton, OH 45402
wachstein@coollaw.com

Gilbert B. Weisman
Becket & Lee LLP
Counsel for American Express
Travel Related Svcs Co Inc Corp
Card
Counsel for MBNA America
(Delaware), N.A.
P.O. Box 3001
Malvern, PA 19355-0701
notices@becket-lee.com

5

Andrew I. Silfen
Counsel for Globe
Metallurgical Inc.
Arent Fox PLLC
1675 Broadway
New York, NY 10019
silfen.andrew@arentfox.com

John D. Rosenberg
Counsel for Chaparral Steel
Midlothian, LP
Goins, Underkofler, Crawford
& Landgdon LLP
1201 Elm Street, Suite 4800
Dallas, TX 75270
johnr@gucl.com

Jeff Hall
Bankruptcy Administration
IKON Financial Services
1738 Bass Road
Post Office Box 13708
Macon, GA 31208-3708
jeffrey.hall@ikonfin.com

Susan M. Cook
Lambert Leser Isackson Cook
& Giunta PC
Counsel for Linamar Corp.
309 Davidson Building
916 Washington Avenue
Post Office Box 835
Bay City, MI 48707-0835
scook@lambertleser.com

Thomas R. Mulally
Szabo Spencer & Mulally
Counsel for CNC Assoc. Inc.
14156 Magnolia Blvd, Suite
200
Sherman Oak, CA 91423
tom@ssmlaw.com

Stephanie Thomas
Pension Benefit Guaranty Corp.
Office of the General Counsel
1200 K Street NW Ste. 340
Washington, DC 20005-4026
thomas.stephanie@pbgc.gov
efile@pbgc.gov

Jacqueline L. Giorgio
Scarcella Rosen & Slome LLP
Counsel for St. Paul Travelers
and affiliates
333 Earle Ovington Blvd,
Suite 901
Uniondale, NY 11553
jgiorgio@srsllp.com

ATTN: Vicky Namken
IBM Corporation
13800 Diplomat
Dallas, TX 75234
vnamken@us.ibm.com

Jose J. Bartolomei
Miller, Canfield, Paddock &
Stone, PLC
Counsel for Ford Motor Co.
150 West Jefferson, Suite
2500
Detroit, MI 48226-4415
bartolomei@millercanfield.com

Patricia E. Rademacher
Jennifer M. Bode
Coston & Rademacher
Counsel for NMHG Fin. Svc.
407 S. Dearborn, Suite 600
Chicago, IL 60605
prademacher@costonlaw.com
jbode@costonlaw.com

Jay B. Goss
Bruchez Goss Thornton
Meronoff & Hawthorne PC
Counsel for Research Valley
Partnership
4343 Carter Creek Pkwy,
Suite 100
Bryan, TX 77802
jgoss@bruchez.com

Robert Owen Vegeler
Vegeler Law Office LLC
Counsel for Jonny on the Spot
Delivery Service, Inc.
1200 National City Center
110 West Berry Street
Fort Wayne, IN 46802
robert@vegelerlaw.com

Julie C. Canner
Seyburn Kahn Ginn Bess &
Serlin
Counsel for Forge Die & Tool
Corp.
2000 Town Center, Suite
1500
Southfield, MI 48075-1195
jcanner@seyburn.com

Brandon Ziegler
Linklaters
19th Floor
1345 Avenue of the Americas
New York, NY 10019
brandon.ziegler@linklaters.com

6

Clark R. Hammond
Johnston Barton Proctor &
Powell LLP
Counsel for Wells Mfg. Co.
1901 6th Avenue North
Suite 2900
Birmingham, AL 35203
crh@jbpp.com

David A. Honig
Eric E. Sagerman
Counsel for the Committee of
Unsecured Creditors
Winston & Strawn LLP
101 California Street, Ste
3900
San Francisco, CA 94111
dhonig@winston.com
esagerma@winston.com

Robert D. McWhorter Jr.
Inzer, Haney & McWhorter
Counsel for Heraeus Electro-
Nite Co.
P.O. Drawer 287
Gadsden, AL 35902
rdmcwhorter@bellsouth.net

Eric J. Breithaupt
Christian & Small LLP
Counsel for Baldwin
Industrial Construction, Inc.
1800 Financial Center
505 North 20th Street
Birmingham, AL 35203
ejbreithaupt@csattorneys.com

Mark D. Hess
Haskell Slaughter & Young LLC
Counsel for National Union Fire
Insurance Company of
Pittsburgh, PA
1400 Park Place Tower
2001 Park Place North
Birmingham, AL 35202
mdh@hsy.com

Kathleen M. Miller
Smith, Katzenstein & Furlow
Counsel for Airgas, Inc.
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
kmiller@skfdelaware.com

Patrick E. Mears
Barnes & Thornburg LLP
Counsel for ArvinMeritor Inc.
and Meritor Heavy Vehicle
Systems, LLC
601 Campau Square Plaza
99 Monroe Avenue NW
Grand Rapids, MI 49503
pmears@btlaw.com

Mark D. Plevin
Joseph L. Meadows
Crowell & Mooring LLP
Counsel for Liberty Mutual
Ins Co
1001 Pennsylvania Ave NW
Washington, DC 20004
mplevin@crowell.com
jmeadows@crowell.com

Robert J. Sidman
Vorys Sater Seymour & Pease
Counsel for Honda of
America Mfg., Inc.
Post Office Box 1008
52 East Gay Street
Columbus, OH 43216-1008
rjsidman@vssp.com

J. Arthur Mozley
Mozley Finlayson & Loggins LLP
Counsel for National Union Fire
Insurance Company of
Pittsburgh, Pa.
One Premier Plaza, Suite 900
5605 Glenridge Drive
Atlanta, GA 30342
amozley@mfllaw.com

Jason R. Searcy
Counsel for Wood County
Machine, Inc.
Post Office Box 3929
Longview, TX 75606
jrspc@jrsearcylaw.com

Leonard N. Math
Chambless Math, PC
Counsel for General Electric
Capital Corporation
P.O. Box 230759
Montgomery, AL 36123-0759
noticesnd@chambless-math.com

**NOTICE VIA EMAIL**

Robert B. Rubin
D. Christopher Carson
Counsel for Debtors
Burr & Forman LLP
420 N. 20th Street, Suite 3100
Birmingham, AL 35203
brubin@burr.com
ccarson@burr.com

Donald S. Bernstein
Damian Schaible
James Murray
Davis Polk & Wardwell
450 Lexington Avenue
New York, NY 10017
Counsel for
JPMorgan Chase Bank as
Administrative Agent
Loan & Agency Services Group
donald.bernstein@dpw.com
damian.schaible@dpw.com
james.murray@dpw.com

David Neier
Counsel for the Committee of
Unsecured Creditors
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
dneier@winston.com

3

Mark W. Cherry
Ishbia & Gagleard, PC
Counsel for SMW
Automotive Corporation
251 Merrill Street, 2nd Floor
Birmingham, MI 48009
mwc@iglawfirm.com

Paul K. Lavelle
Yearout, Spina & Lavelle, PC
Counsel for Alabama Self-
Insured Workers'
Compensation Fund
1500 Urban Center Drive,
Suite 450
Birmingham, AL 35242
plavelle@ysllaw.com

Sander L. Esserman
Robert T. Brousseau
Stutzman, Bromberg,
Esserman & Plifka, PC
Counsel for Foster & Sear,
LLP and McCurdy &
McCurdy, LLP
2323 Bryan St., Suite 2200
Dallas, TX 75201-2689
esserman@sbep-law.com
brousseau@sbep-law.com

Douglas Bacon
Latham & Watkins LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, IL 60606
douglas.bacon@lw.com