IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MILLER BUCKFIRE & CO., LLC,<br><br>   Appellant / Cross Appellee,<br><br>v.<br><br>CITATION CORPORATION; JP<br>MORGAN CHASE BANK,<br><br>   Appellees / Cross Appellants. | CIVIL ACTION NO. 06-G-0582-S |

## MEMORANDUM OPINION

This cause is before the court on appeal from a final decision by the United States Bankruptcy Court for the Northern District of Alabama, Southern Division. Jurisdiction exists pursuant to 28 U.S.C. § 158(a) and Rule 8001 of the Federal Rules of Bankruptcy.

## MAIN APPEAL

### Issues

Whether the Bankruptcy Court abused its discretion in reducing Miller Buckfire & Co., LLC's (Miller Buckfire) fees for financial advice and investment banking services related to Citation Corporation's (Citation) bankruptcy.

Whether the Bankruptcy Court erred in denying Miller Buckfire its requested attorneys' fees.

## STANDARD OF REVIEW

This court reviews a bankruptcy court's determination of attorney's fees under an abuse of discretion standard. *In Re Barron,* 325 F.3d 690, 692 (5th Cir. 2003). Under

this standard, the court must determine whether that exercise of discretion was based on sound legal principles or "guided by erroneous legal conclusions." *Id.* The court reviews the Bankruptcy Court's conclusions of law *de novo* and its specific findings of fact for clear error. *Id.*

## Facts

The court hereby adopts the Bankruptcy Court's Findings of Fact as stated on page two through the second line of page four of its Memorandum Opinion and Order entered on February 17, 2006. The court adopts those facts and recites them herein:

> On July 30, 2004, Citation Corporation, et. al. (hereafter "Citation" or "Debtors") hired Miller Buckfire & Company, LLC (hereafter "Miller Buckfire" or "the Applicant"), pursuant to an Engagement Letter to provide Citation financial advisory and investment banking services necessary for a potential restructuring and/or sale. Citation agreed to pay the Applicant $150,000.00 upon execution of the Engagement Letter and a restructuring fee of $3.5 million (hereafter "the Restructuring Fee"). Applicant was to receive monthly fees of $150,000.00 beginning August 30, 2004, which they agreed would be credited against the Restructuring Fee. Citation filed a chapter 11 petition on September 18, 2004, and shortly thereafter, Debtors filed a Retention Application to retain Miller Buckfire. (Proceeding No. 161) There were several objections to Applicant's retention, but these were all either overruled, withdrawn or sustained. **This Court entered a Retention Order allowing Citation to retain Miller Buckfire for a flat monthly fee in addition to a contingent transaction fee as provided in the Engagement Letter, subject to 11 U.S.C. § 330 reasonableness standards.**[1] (Proceeding No. 789)
>
> The Court confirmed Citation's Plan about eight months after the cases were filed and within five months of entry of the Order authorizing Miller Buckfire's retention. According to the Plan, pre-petition secured creditors accepted ninety-five percent of new common stock in exchange

---

[1] The original Retention Application sought employment pursuant to 11 U.S.C. § 328, which does not incorporate the requirement that fees be reasonable as is provided in 11 U.S.C. § 330. The Court specifically noted its concerns about this provision of the employment and Applicant consented to employment subject to approval of its fees as provided in 11 U.S.C. § 330.

for discharge of a substantial portion of pre-petition secured debt. The holders of senior promissory notes issued by Citation Holding Company received the remaining five percent of the new common stock in exchange for a discharge of Citation Holding Company's debt obligations. General unsecured creditors will receive a pro rata distribution of $10 million that Debtors will fund.

In its fifth and final fee application, Miller Buckfire seeks approval of its Restructuring Fee for $3.5 million plus expenses. Applicant seeks final approval of all the fees paid to date by Debtors in the amount of $1,189,622.90[2] plus expenses totaling $180,215.26[3], leaving a balance due of$2,291,128.45 (which also reflects a credit for a pre-petition retainer held by Miller Buckfire for $54,051.87). (Proceeding No. 2316) The Bankruptcy Administrator has consistently objected to the amount of requested fees of Applicant in several general categories, including: travel time; time spent on the category "Retainer and Fee Applications"; time spent on project category "Exit Financing"; and the Bankruptcy Administrator objected to expenses claimed for Applicant's own attorneys' fees.[4] Debtors and Agent also objected to Applicant's final application, asserting that Miller Buckfire's requested fee was unreasonably high because they did not perform the level of services originally anticipated. (Proceeding Nos. 2330 and 2332)

A297-298 (emphasis added)(footnotes are in the original).

---

[2] This figure is from Applicant's Fifth Interim and Final Application for Allowance of Compensation and Reimbursement of Expenses for Miller Buckfire & Co., LLC as Financial Advisor and Investment Banker to the Debtors for the Period September 18, 2004 through May 23, 2005 (hereafter "Fifth and Final Application"), however, as noted later in the [Bankruptcy] Court's opinion, it appears the amount paid should be $1,207,670.50. (Proceeding No. 2316)

[3] Pursuant to correspondence received after the hearing, the parties have reached an agreement that $65,148.51 in expenses are due Applicant. Applicant is also claiming $110,351.80 as reimbursement for attorney fees for its counsel and allowance of this amount shall be determined by [the Bankruptcy] Court.

[4] The Engagement Letter provided that the Debtors would pay reasonable out-of-pocket expenses, including retained professionals.

## Findings and Holdings

### Miller Buckfire's fees

The court finds that the Bankruptcy Court erred in the legal standards it applied in evaluating the value of Miller Buckfire's services. The Bankruptcy Court used the *Johnson v. Georgia Highway Express* factors[5] in making its valuation. A307-17; *See, Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors are similar to those provided in 11 U.S.C. § 330(a)(1), listed below. Using these factors in its analysis was not error.

The error occurred when the Bankruptcy Court moved to its next step and found an hourly lodestar. Finding a lodestar is appropriate only in the face of an hourly contract or in an industry where lodestar fee determination is usual (e.g., the legal field). In the instant case, the contract between Citation and Miller Buckfire was a fixed fee contract "consistent with fee structures typically utilized by leading investment bankers, which do not bill their clients on an hourly basis." A123, Debtors' Application for . . .Retention and Employment of and (II) Approving the Fee Structure of Miller Buckfire. . . ." [Approved by the Bankruptcy Court]. It is undisputed that fixed fee contracts are customary in the investment banking and financial advisory industry. The instant contract was negotiated at arms length by sophisticated parties. Citation bargained to have Miller Buckfire provide financial advisory and investment banking services for its

---

[5] 1)Time and labor required; 2) novelty and difficulty of the questions; 3) skill requisite to perform the services properly; 4) preclusion of other employment due to acceptance of the project; 5) customary fee; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the court or other circumstances; 8) amount involved and results obtained; 9) experience, reputation, and ability of professionals; 10) undesirability of the case; 11) nature and length of the professional relationship with the client; 12) awards in similar cases.

restructuring in bankruptcy for a sum certain plus various designated types of out-of-pocket expenses. Miller Buckfire's responsibility was to bring Citation's restructuring to successful completion in a professional manner. As in all bargains, and life in general, trade offs were involved. Citation gave up the possibility of saving money with an hourly contract should the matter be settled unusually rapidly. Miller Buckfire assumed the risk of undertaking a project with unknown variables that might grow astronomically in its demands on the company's time and manpower thereby decreasing its profit. Each party was contracting against possible disaster and contracting for what it deemed reasonable consideration for that assurance.

The bankruptcy court erred when it applied an hourly analysis to this fixed fee contract at the end of the process. By doing so, the bankruptcy court rewrote the contract, and the bankruptcy court did not have the power do so. Section 330 of the Bankruptcy Code allows the court to review the fee for reasonableness but does not allow the court to change the entire tenor of the contract. Nothing in the law forbids fixed fee contracts in the bankruptcy arena.

Under Section 330 of the Bankruptcy Code, the bankruptcy court may award professionals such as Miller Buckfire "reasonable compensation for actual, necessary services. . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A), (B). The court may also of its own motion award less than the fees claimed. The statute provides that:

> (a)(1)(3)In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including–

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for--
(I) unnecessary duplication of services; or
(iii) services that were not--
(I) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case.

11 U.S.C. § 330(a)(1).

  Under this statute the bankruptcy court is empowered to review the work done by these standards and in light of the contract between the parties. The bankruptcy court, however, is not free to transform a fixed rate contract, knowingly entered into by knowledgeable parties at arms length, into an hourly rate contract. The bankruptcy court did not find Miller Buckfire's work wanting, only that the project was completed in a relatively short period. Early conclusion is an important incentive inherent in a fixed rate contract.

6

In converting this fixed fee contract to an hourly contract, the Bankruptcy Court made a legal ruling to which this court is not required to give deference. *See, In re Hillsborough Holdings Corp.*, 127 F.3d 1398 (11th Cir. 1997). The Eleventh Circuit Court of Appeals has stated the rule for review under an abuse of discretion standard saying: "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883, 890 (11th Cir. 1990). The Bankruptcy Court abused its discretion in rewriting this contract, and its decision regarding Miller Buckfire's fee is reversed.

Upon remand, the Bankruptcy Court is to reconsider Miller Buckfire's Fifth Application for Compensation. The starting points for the court's considerations are that the contract was a product of free and equal bargaining by sophisticated, knowledgeable parties, fixed rate contracts are typical of the financial advisory and investment banking business, and the fixed-fee contract market rate for investment bankers in similar transactions is the appropriate benchmark. Any reasons for reducing the agreed upon, contracted-for sum must be well supported by evidence that MIller Buckfire did not perform duties it was bound by contract to perform.

## Attorneys' Fees

The Bankruptcy Court denied Miller Buckfire's petition for attorneys' fees. The Bankruptcy Court correctly found that "these fees were primarily for Applicant's benefit in seeking to be employed and in seeking to be compensated." A021. Miller Buckfire does not deny that these fees were for work related to its retention and compensation.

However, the Application filed by Citation states on its face that it would <u>pay "charges of counsel</u> to be retained by MBLY [Miller Buckfire] <u>in connection with retention, fee</u>, or indemnity issues...." A040 (emphasis added).

The bankruptcy court found that "[n]o itemization of these expenses was provided nor was any testimony offered" to support Miller Buckfire's claim for attorneys' fees and summarily denied them. A021. The bankruptcy court's docket shows that a detailed itemization was filed. BR docket 2388. The bankruptcy court must have overlooked this filing. Support for the fees was submitted, and, subject to review by the Bankruptcy Court for reasonableness, Miller Buckfire is explicitly entitled to these fees and expenses under the terms of Citation's Application to the court. A040. A ruling on attorneys' fees may be reversed only upon abuse of discretion. *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1401 (11th Cir. 1997); *In re Red Carpet Corp. of Panama City Beach,* 902 F.2d 883, 890 (11th Cir. 1990). Rulings based on clearly erroneous findings of fact constitute an abuse of discretion. *Id.* The Bankruptcy Court based its findings regarding attorneys' fees on clearly erroneous fact findings of fact. Accordingly, the denial of attorneys' fees is reversed, and, upon remand, the bankruptcy court shall review this itemization and award such fees and expenses as are properly supported.

## **CROSS APPEAL**

Only Citation's cross appeal has been considered. Valry Early, as bankruptcy administrator, filed a brief as a cross-appellant but failed to file a notice of appeal. Accordingly, the brief was not considered by the court and shall be stricken by order.

The issue on cross appeal by Citation as stated in Citation's brief is:

Case 04-08130-TOM11    Doc 2872    Filed 09/28/06    Entered 09/28/06 12:58:16    Desc Main Document    Page 8 of 10

> Whether the Bankruptcy Court erred by not factoring into the amount of the fees awarded to Miller Buckfire, Miller Buckfire's's failure to disclose in its Rule 2014(a) verified statement Miller Buckfire's prior work for the Debtors and/or their owners in connection with a pre-bankruptcy debt restructuring.

Brief of Appellee, p. 2[6], doc. 9.

Certain disclosures are required as part of the retention process under the Bankruptcy Rules to ensure that professionals engaged to aid in restructurings are disinterested and have no significant conflicts of interest. Rule 2014(a) states in pertinent part: "The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, . . ." No penalty is set by the Bankruptcy Rules for failure to disclose. The Bankruptcy Court exercises its discretion in such instances.

During the Final Fee Application hearing, the Bankruptcy Court heard extensive testimony and received evidence concerning Miller Buckfire's pre-retention business relationships. Counsel delved into what the relationships were, what was disclosed on the verified statement, and why certain information was not disclosed in the pre-retention phase. The Bankruptcy Court found that Miller Buckfire's earlier relationship with the Debtors and/or their owners in connection with a pre-bankruptcy debt restructuring was not detrimental to the debtor nor to the bankruptcy estate. Neither the Debtor nor the bankruptcy estate was harmed. In its Memorandum Opinion entered after the final fee application hearing, the Bankruptcy Court stated:

---

[6] The court notes that the pages of this brief were not numbered. All submissions to this court are required to be properly numbered. Any future submissions lacking page numbers will be stricken with leave to re-file corrected documents.

9

Case 04-08130-TOM11    Doc 2872    Filed 09/28/06    Entered 09/28/06 12:58:16    Desc
Main Document    Page 9 of 10

> The Debtor argued that Applicant's prior employment or connections with Kelso should disqualify Applicant. The testimony or evidence presented did not convince the Court the [Miller Buckfire's] services were rendered to benefit any entity other than the Debtor. Applicant was an advisor and not in a position of decision making or ultimate authority.

A011 (brackets in the original).

The court went on to describe additional layers of "insulation of any potential [inappropriate] influence" by Miller Buckfire over Citation or any others involved in the restructuring. While the Bankruptcy Court did not specifically cite Rule 2014(a) in this conclusion of law, the substance and effect of this ruling is that no significant failure to disclose under Rule 2014(a) occurred and no conflict of interest existed. Thus, no need to factor a Rule 2014(a) violation into the Bankruptcy Court's fee decision existed. The Bankruptcy Court is affirmed on the issue raised by the cross appeal, and disclosure under Rule 2014(a) shall not be reconsidered upon remand.

A separate order shall be entered contemporaneously herewith.

DONE and ORDERED this day, September 11, 2006.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.